DANIEL G. SWANSON, SBN 116556
dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:    213.229.7000
Facsimile:    213.229.7520

CYNTHIA E. RICHMAN (*pro hac vice*)
crichman@gibsondunn.com
ZACHARY B. COPELAND (*pro hac vice* pending)
zcopeland@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone:    202.955.8500
Facsimile:    202.467.0539

JULIAN W. KLEINBRODT, SBN 302085
jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    415.393.8200
Facsimile:    415.393.8306

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| PURE SWEAT BASKETBALL INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 4:25-cv-03858-YGR<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT, STRIKE CLASS ALLEGATIONS, OR STAY PROCEEDINGS**<br><br>**Hearing:**<br>Date:        September 2, 2025<br>Time:       2:00 p.m.<br>Place:       Courtroom 1<br>Judge:      Hon. Yvonne Gonzalez Rogers |

Gibson, Dunn &
Crutcher LLP

1  **NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

2        **PLEASE TAKE NOTICE THAT** on September 2, 2025, at 2:00 PM, in Courtroom 1, Fourth

3  Floor, before the Honorable Yvonne Gonzalez Rogers, Defendant Apple Inc., by and through its

4  counsel of record, will and hereby does move under Federal Rules of Civil Procedure 12(b)(1),

5  12(b)(6), and 12(f) to dismiss Plaintiff Pure Sweat Basketball Inc.'s complaint with prejudice and to

6  strike Plaintiff's class allegations, or in the alternative to stay proceedings pending issuance of the

7  mandate in *Epic Games, Inc. v. Apple Inc.*, No. 25-2935 (9th Cir.).  This Motion is supported by this

8  Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities and

9  supporting Declaration of Julian W. Kleinbrodt and attached exhibits; all documents on file in this

10  action; argument of counsel; and such other matters as the Court may consider.

11

12

13  Dated:  June 30, 2025                  GIBSON, DUNN & CRUTCHER LLP

14

15                                */s/ Julian W. Kleinbrodt*

16                                Julian W. Kleinbrodt

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

I.   Whether the Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because:

A.   The Complaint fails for the threshold reasons that (i) Plaintiff does not allege any actual and concrete injury traceable to Apple, as required for Article III standing (all Counts); (ii) Plaintiff's claims are precluded by the settlement agreement in *Cameron v. Apple Inc.*, No. 4:19-cv-03074 (N.D. Cal.) (all Counts); and (iii) Plaintiff improperly seeks to enforce the injunction in *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-5640 (all Counts).

B.   Plaintiff's equitable claims fail for multiple, independent reasons:  They (i) are precluded by the parties' express contract; (ii) do not constitute standalone causes of action under California law; (iii) fail on the merits; and (iv) are barred by Plaintiff's failure to plead the inadequacy of legal remedies (Counts I and II).

C.   Plaintiff fails to plausibly plead facts necessary to support a claim for tortious interference with business expectancy, including (i) the loss of an almost-certain economic benefit, (ii) an independently wrongful act, and (iii) an extracontractual duty to prevent pure economic loss (Count III).

II.   Whether Plaintiff's putative class allegations should be struck under Federal Rule of Civil Procedure 12(f) because no class can be certified on the facts alleged.

III.   Whether this case should be stayed in light of Apple's pending appeal in *Epic Games, Inc. v. Apple Inc.*, No. 25-2935 (9th Cir.).

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   BACKGROUND ............................................................................................................. 2

III.  LEGAL STANDARD ..................................................................................................... 4

IV.   ARGUMENT .................................................................................................................. 5

      A.    Plaintiff's Claims Have Multiple Threshold Defects. ......................................... 5

            1.    Plaintiff Lacks Article III Standing. ........................................................ 5

            2.    The *Cameron* Settlement Precludes Plaintiff's Claims. ......................... 9

            3.    Plaintiff—A Nonparty To *Epic*—Cannot Enforce The *Epic* Injunction. ........ 11

      B.    Plaintiff Fails To State A Claim. ........................................................................ 12

            1.    Plaintiff's Equitable Claims Fail On Four Grounds (Counts I and II). ........... 13

                  a.    The DPLA Bars Plaintiff's Equitable Claims (Counts I and II). ........ 13

                  b.    Constructive Trust Is Not A Standalone Claim And Fails On
                        The Merits (Count I). ...................................................................... 14

                  c.    Unjust Enrichment Is Not A Standalone Claim (Count II). ............... 16

                  d.    Plaintiff's Failure To Plead The Inadequacy Of Legal Remedies
                        Also Bars Its Equitable Theories (Counts I and II). ......................... 16

            2.    Count III Fails Because Plaintiff Does Not Plausibly Allege Tortious
                  Interference With Any Business Expectancy. ......................................... 17

                  a.    Plaintiff Fails To Plausibly Allege The Loss Of Practically
                        Certain  Economic Benefits. ............................................................ 18

                  b.    Plaintiff Pleads No Independently Wrongful Acts. .......................... 19

                  c.    The DPLA Bars Plaintiff From Asserting Non-Contractual
                        Causes Of Action For Economic Loss. ........................................... 20

      C.    The Complaint's Class Allegations Should Be Struck Under Rule 12(f). ........... 21

      D.    This Case Should Be Stayed Pending Resolution Of The *Epic* Appeal. ............ 23

V.    CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ace Am. Ins. Co. v. Accellion, Inc.*,
2022 WL 2341155 (N.D. Cal. Apr. 11, 2022) ................................................................20

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ..........................................................................................5

*Adams v. Wells Fargo Bank, N.A.*,
2015 WL 1434599 (N.D. Cal. Mar. 30, 2015) ................................................................11

*Allen v. Wright*,
468 U.S. 737 (1984) ...........................................................................................................9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .........................................................................................................22

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) .......................................................................................................20

*Asia Inv. Co. v. Borowski*,
133 Cal. App. 3d 832 (1982) ...........................................................................................18

*Bain v. Cal. Teachers Ass'n*,
891 F.3d 1206 (9th Cir. 2018) ...........................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................................................5, 16

*Berlanga v. Univ. of S.F.*,
100 Cal. App. 5th 75 (2024) ............................................................................................13

*BGJ Assocs., LLC v. Superior Ct.*,
75 Cal. App. 4th 952 (1999) ............................................................................................14

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
94 Cal. App. 4th 151 (2001) ......................................................................................13, 14

*California v. Texas*,
593 U.S. 659 (2021) ...........................................................................................................9

*Carney v. Adams*,
592 U.S. 53 (2020) .............................................................................................................6

*Castillo v. Bank of Am., NA*,
980 F.3d 723 (9th Cir. 2020) .....................................................................................22, 23

*Cedar Park Assembly of God of Kirkland v. Kreidler*,
130 F.4th 757 (9th Cir. 2025) ........................................................................................6, 9

1

**TABLE OF AUTHORITIES**
(Continued)

2

**Page(s)**

3

*City of Oakland v. Oakland Raiders,*
   83 Cal. App. 5th 458 (2022) ..................................................................................16

4

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)...............................................................................................9

5

6

*Clark v. Cal. Dep't of Forestry & Fire Prot.,*
   212 F. Supp. 3d 808 (N.D. Cal. 2016) ...........................................................14, 16

7

*CMAX, Inc. v. Hall,*
   300 F.2d 265 (9th Cir. 1962)................................................................................24

8

9

*Communist Party v. 522 Valencia, Inc.,*
   35 Cal. App. 4th 980 (1995) .................................................................................14

10

*Crown Imps., LLC v. Superior Ct.,*
   223 Cal. App. 4th 1395 (2014) .............................................................................18

11

12

*Ctr. for Healthcare Educ. & Rsch., Inc. v. Int'l Cong. for Joint Reconstruction, Inc.,*
   57 Cal. App. 5th 1108 (2020) ...............................................................................17

13

*Davies v. Krasna,*
   14 Cal. 3d 502 (1975) ..........................................................................................14

14

15

*Durell v. Sharp Healthcare,*
   183 Cal. App. 4th 1350 (2010) .............................................................................14

16

*Epic Games, Inc. v. Apple Inc.,*
   2025 WL 1260190 (N.D. Cal. Apr. 30, 2025) ...............................................1, 3, 6, 12

17

18

*Epic Games, Inc. v. Apple Inc.,*
   559 F. Supp. 3d 898 (N.D. Cal. 2021) .....................................................................3

19

*Epic Games, Inc. v. Apple Inc.,*
   67 F.4th 946 (9th Cir. 2023) ................................................1, 2, 3, 8, 12, 22

20

21

*Epic Games, Inc. v. Apple Inc.,*
   73 F.4th 785 (9th Cir. 2023) .................................................................................12

22

*Everett v. Mountains Recreation & Conservation Auth.,*
   239 Cal. App. 4th 541 (2015) ...............................................................................16

23

24

*Fischer v. Machado,*
   50 Cal. App. 4th 1069 (1996) ...............................................................................15

25

*Fulbright v. Jones,*
   2012 WL 4470632 (W.D. Okla. Aug. 13, 2012) ....................................................11

26

27

*George v. eBay, Inc.,*
   71 Cal. App. 5th 620 (2021) .................................................................................19

28

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Gonzales v. JPMorgan Chase Bank, N.A.*,
   2021 WL 1091886 (N.D. Cal. Mar. 22, 2021)................................................................11

*Grecia v. Adobe Inc.*,
   2018 WL 6523983 (N.D. Cal. Dec. 12, 2018)................................................................24

*Greenstein v. Noblr Reciprocal Exch.*,
   585 F. Supp. 3d 1220 (N.D. Cal. 2022) ..........................................................................7

*Haltigan v. Drake*,
   2024 WL 4805371 (N.D. Cal. Nov. 15, 2024)................................................................7

*Hartman v. Summers*,
   120 F.3d 157 (9th Cir. 1997)............................................................................................6

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010)............................................................................................9

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000)............................................................................................9

*Kamm v. Cal. City Dev. Co.*,
   509 F.2d 205 (9th Cir. 1975)............................................................................................5

*Kloth v. Microsoft Corp.*,
   444 F.3d 312 (4th Cir. 2006)..........................................................................................22

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ...........................................................................14, 15, 16, 17, 19

*Lance Camper Mfg. Corp. v. Republic Indemn. Co.*,
   44 Cal. App. 4th 194 (1996) ..........................................................................................13

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)........................................................................................................23

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979)..........................................................................................24

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005)........................................................................................25

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)......................................................................................................7, 9

*Madsen v. Boise State Univ.*,
   976 F.2d 1219 (9th Cir. 1992)..........................................................................................6

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994)........................................................................................................11

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Margolis v. Apple Inc.*,
  743 F. Supp. 3d 1124 (N.D. Cal. 2024) ........................................................17

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ..........................................................................4

*McBride v. Boughton*,
  123 Cal. App. 4th 379 (2004) .........................................................................16

*McDonnell-Douglas Corp. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
  523 F.2d 1083 (9th Cir. 1975) ........................................................................21

*McElrath v. Uber Techs., Inc.*,
  2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) ...............................................25

*Meister v. Mensinger*,
  230 Cal. App. 4th 381 (2014) .........................................................................16

*Meland v. WEBER*,
  2 F.4th 838 (9th Cir. 2021) ...............................................................................4

*Metro Servs. Grp. v. Travelers Cas. & Sur. Co. of Am.*,
  2021 WL 2633416 (N.D. Cal. June 25, 2021) ................................................19

*Michaelian v. State Comp. Ins. Fund*,
  50 Cal. App. 4th 1093 (1996) ...................................................................14, 15

*Moose Lodge No. 107 v. Irvis*,
  407 U.S. 163 (1972) ..........................................................................................6

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) .............................................................................4

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ........................................................................................16

*Optional Cap., Inc. v. DAS Corp.*,
  222 Cal. App. 4th 1388 (2014) .......................................................................14

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ........................................................................................21

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118 (1990) ...................................................................................17

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ...........................................................................21

*Phan v. Transamerica Premier Life Ins. Co.*,
  2023 WL 7597464 (N.D. Cal. Nov. 13, 2023) ..........................................24, 25

Gibson, Dunn &
Crutcher LLP

v

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Pinkert v. Schwab Charitable Fund*,
   48 F.4th 1051 (9th Cir. 2022) ..................................................................................7

*Portnoy v. United States*,
   507 F. App'x 736 (9th Cir. 2013) .........................................................................11

*Prescott v. Nestle USA, Inc.*,
   2020 WL 7053317 (N.D. Cal. Nov. 25, 2020)...................................................24

*Progressive W. Ins. Co. v. Superior Ct.*,
   135 Cal. App. 4th 263 (2005) ..............................................................................20

*Rattagan v. Uber Techs., Inc.*,
   17 Cal. 5th 1 (2024) .....................................................................................12, 20

*Rattagan v. Uber Techs., Inc.*,
   19 F.4th 1188 (9th Cir. 2021) ..............................................................................20

*Republican Nat'l Comm. v. Google LLC*,
   742 F. Supp. 3d 1099 (E.D. Cal. 2024)..........................................................18, 19

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006)................................................................................10

*In re RH S'holder Derivative Litig.*,
   2019 WL 580668 (N.D. Cal. Jan. 23, 2019) .......................................................24

*Robinson v. Dignity Health*,
   2016 WL 7102832 (N.D. Cal. Dec. 6, 2016) ......................................................24

*Robledo v. Randstad US, LP*,
   2017 WL 4934205 (N.D. Cal. Nov. 1, 2017)..................................................24, 25

*Roffman v. Rebbl, Inc.*,
   653 F. Supp. 3d 723 (N.D. Cal. 2023) ................................................................17

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
   2 Cal. 5th 505 (2017) ....................................................................................18, 19

*Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal. App. 4th 221 (2014) ..............................................................................13

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................5, 21

*Santore v. Cuomo*,
   2020 WL 9810016 (S.D.N.Y. Aug. 14, 2020) ....................................................11

*Sepanossian v. Nat'l Ready Mixed Concrete Co.*,
   97 Cal. App. 5th 192 (2023) ................................................................................16

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Sharma v. Volkswagen AG*,
   524 F. Supp. 3d 891 (N.D. Cal. 2021) ..........................................................17

*Shin v. Wash. Mut. Bank, F.A.*,
   2018 WL 4491185 (N.D. Cal. Sept. 19, 2018) ..............................................13

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021) ..........................................................18

*Somers v. Apple Inc.*,
   729 F.3d 953 (9th Cir. 2013)........................................................................5, 7

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)....................................................................16, 17

*SST Millennium LLC v. Mission St. Dev. LLC*,
   2019 WL 2342277 (N.D. Cal. June 3, 2019) ...............................................25

*Stansfield v. Starkey*,
   220 Cal. App. 3d 59 (1990)...........................................................................14

*Stromberg v. Qualcomm Inc.*,
   14 F.4th 1059 (9th Cir. 2021) .........................................................................8

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)....................................................................................6, 7

*Thomas v. Anchorage Equal Rts. Comm'n*,
   220 F.3d 1134 (9th Cir. 2000).........................................................................6

*Tritz v. U.S. Postal Serv.*,
   721 F.3d 1133 (9th Cir. 2013).........................................................................9

*Trump v. CASA, Inc.*,
   2025 WL 1773631 (U.S. June 27, 2025) ................................................11, 12

*Turtle Island Restoration Network v. U.S. Dep't of State*,
   2010 WL 2836911 (N.D. Cal. July 19, 2020)...............................................10

*Twitter, Inc. v. Paxton*,
   56 F.4th 1170 (9th Cir. 2022) .........................................................................9

*United States v. Am. Soc'y of Composers, Authors & Publishers*,
   341 F.2d 1003 (2d Cir. 1965)........................................................................12

*United States v. FMC Corp.*,
   531 F.3d 813 (9th Cir. 2008).........................................................................11

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003)...........................................................................3

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 4:25-cv-03858-YGR

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Vu v. Cal. Com. Club., Inc.*,
    58 Cal. App. 4th 229 (1997) ...................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................................................21

*Washington v. FDA*,
    108 F.4th 1163 (9th Cir. 2024) .................................................................................8

*Welborne v. Ryman-Carroll Found.*,
    22 Cal. App. 5th 719 (2018) ...................................................................................16

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (1996) ...................................................................................18

*Woulfe v. Universal City Studios LLC*,
    2023 WL 6151727 (C.D. Cal. Aug. 28, 2023)..........................................................9

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001)...........................................................................21, 22

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................................22

Fed. R. Civ. P. 71 .......................................................................................................2, 12

L.R. 3-12(a)(1) ...............................................................................................................10

# I.    INTRODUCTION

Plaintiff Pure Sweat Basketball—the developer of two basketball-training apps—"forever released" "any and all" claims against Apple based on allegations that Apple's App Store commissions are "supracompetitive" or "otherwise set at unlawful amounts." *Cameron v. Apple Inc.*, No. 4:19-cv-3704, Dkt. 491, at 4, 44 (N.D. Cal. June 10, 2022).  Notwithstanding that settlement, Plaintiff filed this suit two days after the Court issued a contempt ruling in *Epic Games, Inc. v. Apple Inc.*, alleging under state equity and tort law that it would have paid less in commissions had Apple further loosened its "restrictions" on linked-out payments pursuant to the *Epic* injunction.  Yet Plaintiff never applied for the link entitlement, much less tried to offer linked-out payments.  The Court should reject Plaintiff's attempt to piggyback on *Epic* to obtain gratuitous monetary relief: A nonparty cannot seek to enforce an injunction entered for another's relief, using causes of action it extinguished through settlement, premised on the speculative theory that it lost revenue from linked-out payments it never tried to offer.

Several threshold obstacles bar Plaintiff's claims.  First, Plaintiff lacks Article III standing, which requires a concrete injury traceable to the defendant's conduct.  Plaintiff alleges that it continued to pay Apple ordinary in-app purchase commissions, and imagines—without supporting allegations—that some customers may have chosen a different payment path if Plaintiff had made such a hypothetical path available.  Plaintiff does not suggest that it ever intended to offer external links, let alone took concrete steps to do so.  Nor does Plaintiff specify what its links would have looked like, how they would have functioned differently than available payment options, where they would have been placed, how many customers would have used them, or what commissions Plaintiff would have avoided.  This abstract, contingent theory does not amount to injury in fact, much less support traceability.

Even if Plaintiff could establish standing, its claims collide with its own prior settlement.  As a member of the *Cameron* class, Plaintiff released "all past, present, and future" claims challenging Apple's App Store commission practices.  The Complaint attacks those very same practices and therefore is barred by *res judicata*.  Plaintiff also lacks any right to enforce the *Epic* injunction.  *Epic* was a single-plaintiff lawsuit, and the resulting injunction was a remedy "tied to *Epic*'s injuries." *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 1003 (9th Cir. 2023) (emphasis added).  This Court rejected the notion that the injunction was issued "on behalf of third parties." *Epic Games, Inc. v. Apple Inc.*,

2025 WL 1260190, at *1, *32 (N.D. Cal. Apr. 30, 2025). Plaintiff cannot use state-law claims to do indirectly what the Federal Rules of Civil Procedure bar it from doing directly. *See* Fed. R. Civ. P. 71.

Each cause of action also fails on the merits. Equitable theories like unjust enrichment, quasi-contract, and constructive trust are remedies, not causes of action, and cannot be deployed where the parties' relationship is governed by contract and adequate legal remedies allegedly exist. Plaintiff's tortious interference claim fails because the Complaint identifies no business expectancy that was disrupted, no wrongful act, and no legal duty that Apple breached. And the same problems that foreclose Plaintiff's claims—including its speculative causal theory that turns on potentially hundreds of thousands of individualized inquiries into developer intent, customer behavior, and payment-processing costs—makes class treatment unmanageable and inappropriate on the face of the Complaint.

The Complaint is built on conjecture, barred by settlement, and foreclosed by contract. It should be dismissed and the class allegations struck. In the alternative, Apple respectfully requests that the Court stay the case in full pending the Ninth Circuit's expedited review of the contempt ruling in *Epic*.

## II.    BACKGROUND

"In 2007, Apple entered, and revolutionized, the smartphone market with the iPhone—offering consumers, through a then-novel multi-touch interface, access to email, the internet, and several preinstalled 'native' apps that Apple had developed itself." *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 966 (9th Cir. 2023). Soon after, Apple opened iPhone to apps created by third-party developers. *Id.* Developers have since been able to "distribute their apps to iOS devices only through Apple's App Store," subject to Apple's review of "security, privacy, content, and reliability." *Id.* at 967. This relationship is "symbiotic": "Apple provides app developers with a substantial consumer base," while "ever-expanding" third-party apps boost Apple products' "consumer appeal." *Id.* at 966.

To distribute apps on the App Store, developers must execute a standard Developer Program Licensing Agreement ("DPLA") with Apple. *Epic Games*, 67 F.4th at 968; *accord* Compl. ¶ 73. Together, the DPLA and the App Store Review Guidelines (the "Guidelines") govern how developers may distribute and administer their apps using Apple's proprietary tools and software.[1] As relevant

---

[1] The DPLA and the Guidelines, attached as Exhibits 1–2, may be considered as incorporated by reference in the Complaint, *see* Compl. ¶¶ 13, 16, 25 & n.8, 73, or as judicially noticeable facts not

here, although neither document "prohibit[s] app developers from selling content consumable within an app from their own websites," Compl. ¶ 23, the Guidelines—in former Section 3.1.1—previously restricted developers from including in their apps "buttons, external links, or other calls to action that direct[ed] customers to purchasing mechanisms other than in-app purchase," *id.* ¶ 25.

In 2020, Epic Games, Inc. challenged Apple's App Store business practices, particularly its distribution and in-app payment ("IAP") requirements, under federal and California law. *See Epic Games*, 67 F.4th at 966. After a bench trial, this Court rejected all of Epic's federal and state antitrust claims. *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1007 (N.D. Cal. 2021). As to Epic's claim under California's Unfair Competition Law ("UCL"), the Court held that former Section 3.1.1 was "unfair" and entered an injunction (the "Injunction") providing, in relevant part, that:

> Apple Inc. and its officers, agents, servants, employees, and any person in active concert or participation with them ("Apple"), are hereby permanently restrained and enjoined from prohibiting developers from . . . including in their apps and their metadata buttons, external links, or other calls to action that direct customers to purchasing mechanisms, in addition to In-App Purchasing.

*Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-5640 (N.D. Cal. Sept. 10, 2021), ECF No. 813.

Apple responded to the Injunction by creating a "[L]ink [E]ntitlement program," *Epic Games, Inc. v. Apple Inc.*, 2025 WL 1260190, at *9, *11 (N.D. Cal. Apr. 30, 2025), through which developers could apply to implement linked-out payments subject to a reduced commission rate relative to IAP payments. *See id.* Epic moved to enforce the Injunction in March 2024, asserting that Apple's changes were insufficient to comply with the Injunction. *See id.* at *7–27. After evidentiary hearings, the Court held Apple in civil contempt and ordered Apple to stop enforcing its Link Entitlement program. *Id.* at *1. Apple immediately complied with the Court's order, appealed that ruling, and the Ninth Circuit has expedited review. *Epic Games, Inc. v. Apple Inc.*, No. 25-2935 (9th Cir.).

Two days after the contempt order, Pure Sweat Basketball filed this suit. Compl. ¶ 14. Plaintiff operates two basketball-training apps on the App Store, one of which features in-app subscription purchases. *Id.* ¶¶ 14–16. Plaintiff was one of the named plaintiffs in *Cameron v. Apple Inc.*, No. 4:19-cv-3074 (N.D. Cal.). *See* Ex. 3, ¶¶ 1, 18–20. That case, which involved a class of small developers earning

---

subject to reasonable dispute, *see United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003). Exhibit citations are to the Declaration of Julian W. Kleinbrodt.

Gibson, Dunn & Crutcher LLP

below $1 million in U.S. App Store revenue per year during the relevant period, alleged that Apple charged developers supracompetitive commissions. *Id.* ¶¶ 131, 143. *Cameron* settled shortly after the close of class-certification briefing, with all class members—including Plaintiff—releasing "any and all past, present, and future claims" challenging Apple's commission structure, including any claims under the UCL. Ex. 4 at 2, 5, 26.

Neither of Plaintiff's apps has ever offered a linked-out payment option, and Plaintiff never alleges it sought to offer such an option between when the Injunction went into effect (January 17, 2024) and when the Court struck down the Link Entitlement program (April 30, 2025). Compl. ¶ 18. Nevertheless, Plaintiff asserts a hodgepodge of claims arising from this Court's determination that Apple did not comply with the Injunction, including unjust enrichment, quasi-contract, constructive trust, and tortious interference with business expectancy. *Id.* ¶¶ 76–109. The Complaint does not assert that Apple breached the DPLA, with Plaintiff or any other developer. Nor does the Complaint allege that Apple violated the terms of the *Cameron* settlement. Instead, it expressly pleads that "[a]ll claims for relief . . . arise" from Apple's purported violation of the Injunction entered in *Epic*—to which Plaintiff was not a party—because Plaintiff says it "intends" to provide a link-out option at an unspecified point in the future. *Id.* ¶¶ 18, 75. Plaintiff seeks the return of commissions that hypothetically it might not have paid to Apple *if* Plaintiff had offered linked-out payments from January 2024 to "the date on which Apple fully complies with the injunction"—and *if* customers had used that option. *Id.* ¶¶ 65, 88, 91. Plaintiff seeks to represent not just a putative class of developers who actually intended to offer linked-out payments, but "[a]ll developers of any iOS or iPadOS app" distributed through the App Store that "offered in-app products . . . for a non-zero price." *Id.* ¶ 64.

### III.    LEGAL STANDARD

"The party invoking federal jurisdiction bears the burden of establishing the elements of standing." *Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021) (quotation marks omitted). And "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint

either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

Under Federal Rule of Civil Procedure 12(f), a court may "strike class allegations prior to discovery" "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009); *see also Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212–13 (9th Cir. 1975) (affirming order striking class allegations).

# IV.    ARGUMENT

The Complaint should be dismissed because Plaintiff fails to plausibly establish Article III standing, asserts claims precluded by the parties' *Cameron* settlement agreement, and improperly seeks to enforce the Injunction (§ IV.A). Nor does Plaintiff plausibly state any claim. (§ IV.B). Its equitable claims are doomed because the relevant conduct is governed by an express contract, the DPLA; are not standalone causes of action; are implausibly pleaded; and are defective for failure to allege the inadequacy of legal remedies (§ IV.B.1). Plaintiff likewise fails to plead the elements of a tortious-interference claim (§ IV.B.2). Plaintiff's class allegations should be struck in any event under Rule 12(f) because no class can be certified on the facts alleged (§ IV.C). And because "[a]ll" of Plaintiff's claims rest on the *Epic* Injunction, Compl. ¶ 75, this case should be stayed (either now or after this motion is resolved) pending issuance of the mandate in *Epic*, which may clarify or foreclose the claims (§ IV.D).

## A.    Plaintiff's Claims Have Multiple Threshold Defects.

Plaintiff's claims should be rejected at the outset because of three insurmountable threshold flaws. *First*, Plaintiff has no standing: Its theory of economic harm rests on speculation and the independent actions of third-party customers, rather than an actual and concrete injury traceable to Apple. *Second*, the Complaint is barred by Plaintiff's prior settlement agreement, where it agreed to release all present and future claims arising from Apple's App Store commission policies. *Third*, Plaintiff is not entitled to enforce the *Epic* Injunction as a nonparty to that decree.

### 1.    Plaintiff Lacks Article III Standing.

Plaintiff's alleged injury rests entirely on speculation. Plaintiff contends that, had Apple

adopted different policies after the Injunction went into effect, Plaintiff might have offered an external payment option, some customers might have used it, and Plaintiff thereby might have avoided paying certain commissions to Apple.  But Article III requires a plaintiff to allege: (1) "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant," rather than the "actions of independent [parties]," and (3) that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Cedar Park Assembly of God of Kirkland v. Kreidler*, 130 F.4th 757, 764–65 (9th Cir. 2025).  Plaintiff never offered linked-out payments and pleads no facts showing any concrete monetary loss, let alone one that is traceable to Apple's conduct rather than Plaintiff's own choices or those of independent customers.  Plaintiff's hypothetical and contingent theory of harm falls short of Article III's injury-in-fact and traceability requirements.

***No Actual, Concrete Injury.***  A plaintiff cannot be injured by a restriction it never encountered. *See Carney v. Adams*, 592 U.S. 53, 61 (2020); *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) ("[A] plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself.").  Here, Plaintiff challenges Apple's alleged restrictions on linked-out payments.  But Plaintiff *never offered* linked-out payments in the first place, so it cannot have been subject to any restrictions on that option.  Compl. ¶¶ 15, 18; *see Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 167 (1972) (no standing to challenge membership restriction where plaintiff "never sought to become a member").

Nor has Plaintiff alleged that it ever had any "concrete plans" to offer linked-out payments after the Injunction went into effect.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).  Standing doctrine is clear:  A plaintiff must implement a concrete plan and have its efforts frustrated by the defendant to have an actual injury, which Plaintiff does not allege here.  *See Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1214 (9th Cir. 2018); *Hartman v. Summers*, 120 F.3d 157, 160 (9th Cir. 1997).  Plaintiff alleges that it now "intends to modify its apps to offer linked-out payments" at a future date.  Compl. ¶ 18.  That theory fails for two reasons.  First, Apple's policies have since changed, and the purported restrictions from which Plaintiff claims injury are no longer in effect.  *See Epic Games, Inc. v. Apple Inc.*, 2025 WL 1260190, at *46 (N.D. Cal. Apr. 30, 2025).  Second, "expressed 'intent,'" by itself, "can hardly qualify as a concrete plan."  *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d

1134, 1140 (9th Cir. 2000) (en banc). Plaintiff does not allege that it applied to offer linked-out pay-ments or took a single step to design and implement them. Absent any "details necessary to show that [its] plans are" or were "concrete," *Pinkert v. Schwab Charitable Fund*, 48 F.4th 1051, 1055 (9th Cir. 2022), vague "'some day' intentions" do not give Plaintiff standing, *Earth Island Inst.*, 555 U.S. at 496; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).[2]

Plaintiff tries to excuse its inaction by suggesting that Apple's "restraints" somehow prevented Plaintiff from offering linked-out payments or made doing so futile. Compl. ¶ 18. That suggestion is beside the point and baseless. A plaintiff cannot manufacture standing by asserting futility without having concrete plans to engage in the restricted action, *Earth Island Inst.*, 555 U.S. at 496, and, as noted, Plaintiff took no steps after the Injunction went into effect to implement linked-out payments. In any case, Plaintiff's allegations undermine its conclusory excuse for failing to apply for the link entitlement. The Complaint pleads that (1) Apple did not forbid linked-out payments, Compl. ¶ 23; (2) Apple provided tools to facilitate linked-out payments, *id.* ¶ 47; and (3) other developers applied to use that option, *id.* ¶ 6. Any argument that Plaintiff was prevented from formulating plans to offer linked-out payments "is thus implausible in the face of contradictory . . . facts alleged in [the] com-plaint." *Somers v. Apple Inc.*, 729 F.3d 953, 964 (9th Cir. 2013); *cf. Haltigan v. Drake*, 2024 WL 4805371, at *6 (N.D. Cal. Nov. 15, 2024) (no standing where asserted futility was contradicted by allegations that "it was possible [plaintiff] could have proceeded past" application "process"). Article III does not permit a developer to sit on the sidelines, taking no steps to use the program, and then co-opt the asserted injuries of a different party in a different case to claim monetary relief for itself.

Not only did Plaintiff fail to take the concrete actions necessary for standing, but the damages it claims as a result are likewise far too "hypothetical" to support "actual injury." *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1228–29 (N.D. Cal. 2022). Resolving this question— "[w]hether" Apple wrongfully earned any commissions, "and, if so, in what amount," Compl. ¶ 68(f)— requires an impermissible degree of guesswork. As the Ninth Circuit confirmed in *Epic Games, Inc.*

---

[2] The Complaint references an instance in 2023 when Apple rejected one of Plaintiff's apps because it "contained links to purchase content outside of the app." Compl. ¶ 17. But that incident is irrelevant because the Injunction did not take effect until January 17, 2024, *id.* ¶ 2, and Plaintiff seeks damages only for conduct after that date, *id.* ¶¶ 65, 75.

Gibson, Dunn &
Crutcher LLP

*v. Apple Inc.*, "[c]alculating the damages caused by the anti-steering provision would require a pro-tracted and speculative inquiry" into how users might have responded to alternative payment options, including whether and to what extent "users who multi-home and can therefore substitute" would take advantage of those alternatives. 67 F.4th 946, 1003 (9th Cir. 2023). Plaintiff pleads nothing about the availability of its apps on other platforms or how multi-homing users might change their behavior if link-outs were implemented. It would be incongruous to issue an injunction in *Epic* because "the un-derlying injury does not readily lend itself to calculable money damages," *id.*, only to then allow a different developer to seek money damages based on the same kind of speculation. Plaintiff's Com-plaint not only fails to identify an "extraordinary difference" distinguishing its claims from *Epic*, *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1075 (9th Cir. 2021), but underscores why attempting to calculate damages in this context is hopelessly speculative.

Plaintiff alleges that it paid IAP commissions it supposedly could have avoided had it offered linked-out payments. *See, e.g.*, Compl. ¶¶ 8–9, 51, 58. But even setting aside all the problems above, Plaintiff never plausibly pleads that it would have saved money even if it had offered linked-out pay-ments. Setting up those linked-out payments would have entailed their own expenses to Plaintiff, and if setting up linked-out payments would have been more costly to Plaintiff than simply paying com-missions, Plaintiff necessarily cannot have suffered a financial injury (and in fact may have been better off) by not offering linked-out payments. And even if Plaintiff had set up those linked-out payments, it offers no plausible facts demonstrating what sums it would have saved. Customers presented with a hypothetical link-out option would have had a "choice between payment options": they *might* have paid externally, or they might have continued to pay in-app. *Id.* ¶ 3. Customers may have chosen to use IAP for any number of reasons, such as convenience or security. *See Epic Games*, 67 F.4th at 997; *cf. Washington v. FDA*, 108 F.4th 1163, 1175 (9th Cir. 2024) (no standing where alleged injuries hinged on "a wide range of individualized considerations that are difficult to predict"). Without any well-pleaded facts to estimate how many users would have behaved differently in the but-for world, Plain-tiff's asserted injury rests on pure conjecture.

***No Traceability.*** For similar reasons, Plaintiff's damages theory fails to satisfy Article III's traceability requirement. Even if Plaintiff suffered monetary losses, they must be "fairly traceable" *to*

Gibson, Dunn &
Crutcher LLP

*Apple's* challenged conduct, *Cedar Park Assembly of God*, 130 F.4th at 764–65, not to "the independent action[s] of some third part[ies] not before the court," *Defs. of Wildlife*, 504 U.S. at 560. When a plaintiff alleges that the defendant affected the behavior of third parties, courts do not assume traceability. To the contrary, standing in this context "is ordinarily 'substantially more difficult' to establish." *California v. Texas*, 593 U.S. 659, 675 (2021). A causal chain with "numerous third parties . . . whose independent decisions" have a "significant effect" on a plaintiff's injuries is "far too weak" to support standing. *Allen v. Wright*, 468 U.S. 737, 759 (1984). Here, Plaintiff's claimed damages depend on "speculation" and "guesswork," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413–14 (2013)—nothing plausibly establishes whether and how frequently customers would have made external payments. And if those consumers would have made in-app purchases regardless, then Plaintiff's commission payments were the result of intervening, independent choices—destroying any link to *Apple's* conduct.

Article III also bars standing where the alleged injury is "self-inflicted"; that is, traceable to the plaintiff's own choices rather than the defendant's conduct. *Clapper*, 568 U.S. at 418; *accord Woulfe v. Universal City Studios LLC*, 2023 WL 6151727, *1, *4 (C.D. Cal. Aug. 28, 2023) ("To the extent that an injury is self-inflicted or due to the plaintiff's own fault, the causal chain is broken."). That principle, too, forecloses standing here. No customers made linked-out payments to Plaintiff because Plaintiff *did not offer* linked-out payments. Plaintiff's "voluntary" decision not to apply for a link-out entitlement—as some other developers allegedly did, Compl. ¶ 50—is a "self-inflicted" harm that cannot "create an Article III injury." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1176 (9th Cir. 2022).

### 2. The *Cameron* Settlement Precludes Plaintiff's Claims.

Plaintiff's claims are barred for another threshold reason: they were released and are precluded by Plaintiff's participation in the class-action settlement in *Cameron v. Apple Inc.*, No. 4:19-cv-03074 (N.D. Cal.). Court-approved settlements "have res judicata effect," *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1141 (9th Cir. 2013), and may preclude later claims "even though the claim was not presented and might not have been presentable in the [prior] class action," so long as the new claim arises from the same "factual predicate," *Hesse v. Sprint Corp.*, 598 F.3d 581, 590–91 (9th Cir. 2010); *see also Howard v. Am. Online Inc.*, 208 F.3d 741, 747 (9th Cir. 2000) (settlement "unequivocally bars" claims based on identical billing practices). Preclusion applies even where a plaintiff's later claim is premised

on a different theory of anticompetitive conduct, if the factual predicate remains identical. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006).

These standards are met here. In *Cameron*, Plaintiff and other developers challenged Apple's App Store commission structure under federal antitrust law and California's UCL. As part of the August 2021 settlement, approved by the Court in June 2022, those developers "settle[d] the Action in its entirety with respect to all potential claims arising out of the same facts," and "forever released" "any and all past, present, and future claims" that "were brought, could have been brought, or arise from the same facts underlying the claims asserted in the [*Cameron*] Action," including any claims alleging that "commissions charged by Apple on paid downloads or in-app purchases of digital content (including subscriptions) through the App Store are supracompetitive, inflated, or otherwise set at unlawful amounts." Ex. 4 at 26, 44. Plaintiff was a member of the class and agreed to these terms. *Id.* at 18.

Although Plaintiff now tries to frame its claims around Apple's conduct after the Injunction in *Epic*, the Complaint makes clear that its alleged injury purportedly results from the same commission practices challenged in *Cameron*. *Compare* Compl. ¶¶ 15, 21, 30, *with* Ex. 3, ¶¶ 3–4, 6, 31, 36, 41, 155, 157. Indeed, Plaintiff's theory here is that "Apple schemed to maintain the status quo, as if no Injunction had entered," Compl. ¶ 51, and that Plaintiff remained subject to the "prior regime" of commission rates, *id.* ¶ 30. The only new element is the assertion that Apple should have further changed those practices in light of the *Epic* Injunction—an allegation that presupposes the same factual predicate (Apple's commission model) as *Cameron*. A post-settlement court order does not reopen claims the parties already resolved, and Plaintiff "cannot artfully plead [its] theories to elude the res judicata bar of its claims." *Turtle Island Restoration Network v. U.S. Dep't of State*, 2010 WL 2836911, at *1, *4 (N.D. Cal. July 19, 2020). That bar is especially important here: While Epic obtained an injunction based on its UCL claim, Plaintiff specifically *released* its own UCL claim—yet now invokes Epic's UCL injunction to press claims that arise from the same underlying practices. Such a maneuver undermines the settlement's finality.

The relation history of *Cameron*, *Epic*, and this case confirms their factual overlap. Cases are "related" when they "concern substantially the same parties, property, transaction, or event." L.R. 3-12(a)(1). On Plaintiff's motion, this Court related this case with *Epic*. *See Epic Games, Inc.*, Dkts.

1537, 1577.  And *Cameron* and *Epic* have likewise been related.  *Cameron*, Dkt. 107.  All three cases have thus been deemed to concern the same transactions or events.  That procedural backdrop illustrates the point: Despite new legal theories, Plaintiff's claims target the same core practices it challenged in *Cameron*.  The Complaint is therefore precluded and should be dismissed with prejudice.  *See Portnoy v. United States*, 507 F. App'x 736, 737 (9th Cir. 2013) (dismissal with prejudice "proper[]" where complaint is "barred by the doctrine of res judicata"); *Gonzales v. JPMorgan Chase Bank, N.A.*, 2021 WL 1091886, at *2–3 (N.D. Cal. Mar. 22, 2021) (Gonzalez Rogers, J.) (dismissing complaint with prejudice on *res judicata* grounds).  Moreover, even if *res judicata* did not cover Plaintiff's claims here, the broad release provision certainly does and equally bars the claims.  *See Adams v. Wells Fargo Bank, N.A.*, 2015 WL 1434599, at *2–3 (N.D. Cal. Mar. 30, 2015) (Gonzalez Rogers, J.) (dismissing claim with prejudice because it was "released" as part of a "court-approved class action settlement").

### 3.    Plaintiff—A Nonparty To *Epic*—Cannot Enforce The *Epic* Injunction.

All of Plaintiff's claims fail for the additional threshold reason that they seek to enforce an injunction issued in a separate case to which Plaintiff was not a party.  That is not a valid basis for suit.  An injunction is designed to resolve "a specific dispute between real parties," and the court issuing it "is charged with fashioning a remedy for a specific deprivation, not with the drafting of a statute addressed to the general public."  *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 762 (1994).  As a result, remedies granted in cases cannot be enforced by strangers in collateral proceedings.  Just days ago, the Supreme Court affirmed this principle in *Trump v. CASA, Inc.*, stating that "[w]hile party-specific injunctions sometimes advantage nonparties, they do so only incidentally."  2025 WL 1773631, at *11 (June 27, 2025) (quotation marks omitted).  "As a matter of law," therefore, an "injunction's protections extend[] only to the suing plaintiff—as evidenced by the fact that *only the plaintiff can enforce the judgment against the defendant*."  *Id.*  (emphasis added).  Accordingly, courts have repeatedly held that nonparty incidental beneficiaries of injunctions "lack standing to enforce" them.  *Santore v. Cuomo*, 2020 WL 9810016, at *1–2 (S.D.N.Y. Aug. 14, 2020); *see Fulbright v. Jones*, 2012 WL 4470632, at *1, *4 (W.D. Okla. Aug. 13, 2012) (nonparty "lack[ed] standing" to "enforce the permanent injunction").  Similarly, "*incidental* third-party beneficiaries may not enforce consent decrees."  *United States v. FMC Corp.*, 531 F.3d 813, 820 (9th Cir. 2008).

Here, Plaintiff was not a party to *Epic*, was not "named in the" Injunction, and was not "specifically granted" any relief under it. *United States v. Am. Soc'y of Composers, Authors & Publishers*, 341 F.2d 1003, 1008 (2d Cir. 1965). And nothing in the Injunction authorizes enforcement by third parties—nor, as *CASA* makes clear, could it. To the contrary, this Court emphasized that the Injunction was designed to remedy Epic's "*own injuries*" and *disclaimed* that the Injunction was issued "*on behalf of* third parties." *Epic Games*, 2025 WL 1260190, at *1, *32. The Ninth Circuit likewise held the Injunction's scope was "tied to *Epic's* injuries" alone. *Epic Games*, 67 F.4th at 1003 (emphasis added). And Judge Smith, who authored that decision, later reiterated that the Injunction conferred only "incidental benefits to non-parties"—a result that is "inevitable" when a "competitor-plaintiff" wins an injunction regulating a complex marketplace. *Epic Games, Inc. v. Apple Inc.*, 73 F.4th 785, 788 (9th Cir. 2023) (Smith, M., J., concurring in granting motion for stay of mandate).

Assuming that the *Epic* Injunction survives *CASA* at all, Plaintiff cannot invoke those incidental benefits common to all developers to leverage the Injunction into its own nonparty bid for damages. The Complaint masquerades as a series of equitable and tort theories, but those theories require identifying a particular "legal duty." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 37 (2024); *see also infra* at 19–21. The only purported duty Plaintiff identifies is Apple's obligation to comply with the *Epic* Injunction, mentioning it over 100 times and admitting that "[a]ll claims . . . below and herein arise from Apple's defiance of the Injunction." Compl. ¶ 75; *accord id.* ¶¶ 85, 107. That's the fundamental problem: Plaintiff is not asserting a right conferred by statute, contract, or the Constitution; it is concededly asserting violations of someone else's injunction. Whether Apple complied with that Injunction is relevant in *Epic* itself, where appropriate parties can seek to enforce it. *See CASA*, 2025 WL 1773631, at *10 n.11 (citing Fed. R. Civ. P. 71). But it cannot give rise to a private lawsuit by a nonparty seeking monetary recoveries.

## B.    Plaintiff Fails To State A Claim.

Plaintiff's Complaint fails to state a claim for several reasons. The parties' express contract, the DPLA, bars Plaintiff's equitable theories—two of which are not even standalone causes of action. Plaintiff's failure to plead the inadequacy of legal remedies likewise precludes any request for equitable relief. And Plaintiff fails to plausibly allege the basic requirements for a tortious-interference claim,

such as the loss of an almost-certain benefit, the commission of any independently wrongful act, or the presence of any extracontractual duty supporting claims for pure economic loss.

### 1.    Plaintiff's Equitable Claims Fail On Four Grounds (Counts I and II).

#### a.    The DPLA Bars Plaintiff's Equitable Claims (Counts I and II).

Plaintiff alleges the DPLA "applies to the claims asserted by Plaintiff and the proposed class." Compl. ¶ 73.  That concession is fatal to Plaintiff's equitable theories, none of which may proceed under California law in the face of a valid contract.  Counts I and II should be dismissed with prejudice.

Start with Plaintiff's quasi-contract claim.  Under California law, "a claim for quasi-contract 'cannot lie where there exists between the parties a valid express contract covering the same subject matter.'"  *Shin v. Wash. Mut. Bank, F.A.*, 2018 WL 4491185, at *10 (N.D. Cal. Sept. 19, 2018) (Gonzalez Rogers, J.) (quoting *Lance Camper Mfg. Corp. v. Republic Indemn. Co.*, 44 Cal. App. 4th 194, 203 (1996)).  Thus, a party to an express contract can maintain a quasi-contract theory only when it alleges "that the express contract is void or was rescinded," *Lance Camper Mfg. Corp.*, 44 Cal. App. 4th at 203; for instance, if "'procured by fraud,'" *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014).

Yet rather than pleading the absence of an express contract, Plaintiff pleads its presence. Compl. ¶¶ 13, 73 & n.59.  On its face, the DPLA governs "the same subject matter" as this suit.  *Berlanga v. Univ. of S.F.*, 100 Cal. App. 5th 75, 89 (2024).  Section 3.4 of the DPLA's "Additional Terms" describes the commissions that Apple collects when developers sell products in-app and that Plaintiff challenges in this suit.  *See* Ex. 1, Schedule 3, § 3.4;  Compl. ¶¶ 21, 30, 51.  And nowhere does Plaintiff plead supporting facts establishing—or even asserting—that the DPLA is "void or was rescinded." *Lance Camper Mfg. Corp.*, 44 Cal. App. 4th at 203.  To the contrary, Plaintiff alleges that the DPLA *continues* to bind the parties.  Compl. ¶ 73.  California law thus bars Plaintiff's quasi-contract theory.

The same is true for Plaintiff's unjust enrichment and constructive-trust claims.  Under California law, "[w]hen parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract."  *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001).  Accordingly, "[a]s a matter of law," unjust enrichment is inapplicable

"where the parties have an enforceable express contract." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *accord Cal. Med. Ass'n, Inc.*, 94 Cal. App. 4th at 172.  That goes for constructive trust under California law too, which is merely a mechanism to redress unjust enrichment.  *See Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995) ("The essence of the theory of constructive trust is to prevent unjust enrichment.").  The DPLA unambiguously provides that Apple can receive commissions from in-app purchases.  There is therefore no "unjust enrichment" when Apple received sums to which the parties agreed in their express contract.  *See Cal. Med. Ass'n, Inc.*, 94 Cal. App. 4th at 172.

> **b.    Constructive Trust Is Not A Standalone Claim And Fails On The Merits (Count I).**

Plaintiff's constructive-trust theory fails on an additional ground: "constructive trust" is not even a standalone cause of action under California law.  As noted, "[a] constructive trust is not a substantive device but merely a *remedy*."  *Davies v. Krasna*, 14 Cal. 3d 502, 515 (1975).  Plaintiff's standalone claim for constructive trust is therefore foreclosed as a matter of law and should be dismissed with prejudice.  *See Clark v. Cal. Dep't of Forestry & Fire Prot.*, 212 F. Supp. 3d 808, 812 (N.D. Cal. 2016) (when a "defect is legally incurable, the claim is dismissed with prejudice").

But even if constructive trust were an independent cause of action, Plaintiff fails to plausibly plead either of its key elements:  that (1) the defendant possesses specific identifiable property, and (2) such property can be traced back to Plaintiff.  Constructive-trust claims are not merely damages claims against general assets, *see BGJ Assocs., LLC v. Superior Ct.*, 75 Cal. App. 4th 952, 968–69 (1999), but instead are designed to secure the return of "*specific identifiable property*" of the plaintiff in the defendant's possession, *Michaelian v. State Comp. Ins. Fund*, 50 Cal. App. 4th 1093, 1114 (1996) (emphasis added).  As a result, the "[p]leading requirements" for constructive trust include alleging the "specific identifiable property" at issue.  *Id.*; *see also Stansfield v. Starkey*, 220 Cal. App. 3d 59, 76 (1990) ("specific identifiable property is a prerequisite" for "a constructive trust" theory).  And for funds to be recoverable under a constructive-trust theory, the plaintiff must show that the misappropriated funds can "*clearly* be traced to particular funds or property in the defendant's possession." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003) (emphasis added); *see Optional*

*Cap., Inc. v. DAS Corp.*, 222 Cal. App. 4th 1388, 1402 (2014) (plaintiff must "trace the funds to monies in the defendant's possession"). Thus, when "[t]he recovery requested … cannot be traced to any particular funds in [the defendant's] possession," those funds are "not the proper subject of a constructive trust." *Korea Supply Co.*, 29 Cal. 4th at 1150. The Complaint fails each requirement.

   ***No Specific, Identifiable Property.*** The Complaint never pleads that Apple misappropriated any specific asset or identifiable tranche of funds belonging to Plaintiff. Instead, the Complaint's constructive-trust count vaguely pleads that Plaintiff was "deprived of . . . direct engagement with [its] own customers." Compl. ¶ 91. But abstract "engagement" is not specific, identifiable property. And the Complaint *never enumerates* the amount of funds in Apple's possession that supposedly belongs to Plaintiff. At most, the Complaint offers far-reaching claims about vague, speculative amounts of funds that *all developers* were collectively deprived of as a result of Apple's asserted noncompliance with the *Epic* Injunction. *See id.* ¶ 51 ("billion dollar . . . revenue stream"); ¶ 58 ("'hundreds of millions to billions'"); ¶ 59 ("potentially billions"); ¶ 79 ("hundreds of millions or even billions"). And the Complaint eventually admits that Plaintiff simply does not know whether Apple possesses *any* wrongfully earned commissions. *See id.* ¶ 68(b). It is no wonder that Plaintiff cannot describe any "specific identifiable property" in Apple's possession that was misappropriated from Plaintiff. *Michaelian*, 50 Cal. App. 4th at 1114. As discussed above, Plaintiff's theory of economic harm amounts to a thought experiment about the number of customers that *might have* used Plaintiff's linked-out payments *if* Plaintiff had offered them. *See supra* at 5–9.

   That Plaintiff seeks the return of fungible dollars, rather than any individual assets, further undermines the notion that Plaintiff seeks the return of specific, identifiable property. Of course, "it is not necessary that each coin or bill be earmarked." *Fischer v. Machado*, 50 Cal. App. 4th 1069, 1072 (1996). But Plaintiff must at least assert "a specific sum" that Apple misappropriated for any amount of money to be "capable of identification" as Plaintiff's. *Id.* At best, Plaintiff asserts a "generalized claim for money," which is *not* a claim for "specific, identifiable sums" that Apple wrongfully obtained. *Vu v. Cal. Com. Club., Inc.*, 58 Cal. App. 4th 229, 235 (1997).

   ***No Tracing.*** To sustain a constructive-trust theory, a plaintiff must establish that some property originally "belonging in good conscience to the plaintiff" can "*clearly* be traced to particular funds or

property in the defendant's [wrongful] possession." *Korea Supply Co.*, 29 Cal. 4th at 1150 (emphasis added). For the reasons already stated, *no* specific funds are alleged to be in Apple's possession that can be traced to the challenged conduct. Whether and how many customers would have used Plaintiff's hypothetical link-out option, had Plaintiff even offered it, requires extensive speculation—necessarily defeating the notion that funds "clearly" can be traced *from* Plaintiff's possession *to* Apple's. And the mere fact that Apple *received* commissions does nothing to show that those commissions belonged *to Plaintiff*. Bare receipt of commissions has a perfectly lawful "obvious alternative explanation"—consumer choice—which belies the notion that Plaintiff plausibly pleaded that Apple is the constructive trustee of *wrongfully* received sums. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567, 557 (2007).

### c.    Unjust Enrichment Is Not A Standalone Claim (Count II).

Plaintiff's purported "cause of action" for unjust enrichment, Compl. p. 22, should likewise be dismissed—independent of the DPLA—because it is well-established that "there is no cause of action in California for unjust enrichment," *Everett v. Mountains Recreation & Conservation Auth.*, 239 Cal. App. 4th 541, 553 (2015) (affirming dismissal of unjust-enrichment claim); *accord City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477 (2022). Nor is unjust enrichment "even a remedy." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004). Rather, it is simply "a general principle" that underlies various *other* "legal doctrines and remedies." *Id.* (quotation marks omitted). Plaintiff's assertion of a standalone cause of action for unjust enrichment is thus barred as a matter of law and should be dismissed with prejudice. *See Clark*, 212 F. Supp. 3d at 812.

### d.    Plaintiff's Failure To Plead The Inadequacy Of Legal Remedies Also Bars Its Equitable Theories (Counts I and II).

A party seeking equitable relief "must establish that she lacks an adequate remedy at law" to redress the asserted harm. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see O'Shea v. Littleton*, 414 U.S. 488, 502 (1974). Plaintiff's claims for constructive trust, unjust enrichment, and quasi-contract are each equitable in nature. *See Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 97 Cal. App. 5th 192, 207 (2023) ("[A]n unjust enrichment claim is grounded in equitable principles."); *Welborne v. Ryman-Carroll Found.*, 22 Cal. App. 5th 719, 725 (2018) ("A cause of action for quasi-contract invokes consideration of equitable principles."); *Meister v. Mensinger*, 230 Cal. App. 4th 381, 399 (2014) ("The issue of whether to impose a constructive trust is an equitable issue for the

court."). So too are the demanded equitable remedies of restitution and disgorgement. *See Sonner*, 971 F.3d at 844 (restitution); *Ctr. for Healthcare Educ. & Rsch., Inc. v. Int'l Cong. for Joint Recon-struction, Inc.*, 57 Cal. App. 5th 1108, 1125 (2020) (disgorgement). But Plaintiff has not alleged that legal remedies would be inadequate to address its purported harms.

The Complaint does not allege that monetary damages would be inadequate to redress the com-missions Plaintiff claims it should not have paid. To the contrary, Plaintiff requests money damages, presumably under its tort theory, *see* Compl. Prayer for Relief—and nowhere alleges, as required, that those legal damages are inadequate. That pleading failure is fatal. *See Margolis v. Apple Inc.*, 743 F. Supp. 3d 1124, 1138 (N.D. Cal. 2024) (dismissing equitable claim where plaintiffs did not allege "that damages or other legal remedies are inadequate to remedy the harms they allegedly suffered"); *Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 731 (N.D. Cal. 2023) (similar); *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 909 (N.D. Cal. 2021) (similar). Because Plaintiff has failed to plead that legal remedies are insufficient, its equitable claims should be dismissed, and its requests for equitable remedies denied.

### 2. Count III Fails Because Plaintiff Does Not Plausibly Allege Tortious Interference With Any Business Expectancy.

Plaintiff's claim for tortious interference with business expectancy, Compl. ¶¶ 104–09, should also be dismissed with prejudice. Plaintiff asserts that Apple acted tortiously by enacting policies that supposedly affected "expected business relationships" between developers and customers. *Id.* ¶¶ 106, 108. But a generalized duty not to "interfere" with business relationships is nowhere in the DPLA, in which Plaintiff agreed that Apple has discretion to curate the App Store in a variety of ways, *see, e.g.*, Ex. 1, §§ 2.1, 2.6, 2.8, 3.1(c), 3.2, 3.3.3(C)–(D), even if those measures may disrupt developers' incho-ate business hopes. Nor does tort law supply such a duty. Indeed, California has long recognized "the dangers inherent in imposing tort liability" on businesses for their decisions about how to compete in the marketplace. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1137 (1990).

Consistent with that warning, courts enforce a "rigorous pleading burden" on plaintiffs asserting interference claims. *Korea Supply Co.*, 29 Cal. 4th at 1158. A plaintiff must establish "'(1) an eco-nomic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [or negligent]

acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the rela-tionship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.'" *Crown Imps., LLC v. Superior Ct.*, 223 Cal. App. 4th 1395, 1404 (2014) (alteration in original). The Complaint fails to satisfy those standards. It fails to plead that Plaintiff lost any cognizable business expectancy, that any alleged "interference" was unlawful under California law, or, relatedly, that its claims for pure economic loss may proceed in the absence of any duty by Apple to prevent it.

### a. Plaintiff Fails To Plausibly Allege The Loss Of Practically Certain Economic Benefits.

The Complaint fails to establish the loss of any potential economic benefit cognizable under California law. "[C]ourts have narrowly construed this element," *Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1122 (E.D. Cal. 2024), "to avoid promoting speculative claims," *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 518 (2017). Courts thus "requir[e] specific facts to show that a benefit was almost certain," *Republican Nat'l Comm.*, 742 F. Supp. 3d at 1122, such as "which entities" the plaintiff "was negotiating with," "the terms" of their agreement, and "how much money, if any, Plaintiff lost as a result" of the defendant's interference, *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 962 (S.D. Cal. 2021). An interference claim is not available as a matter of law when a plaintiff's theory "hinge[s] on a high degree of uncertainty," such as when third parties "retain[] discretion" to reject a business offer, *Roy Allan Slurry Seal, Inc.*, 2 Cal. 5th at 519 (affirming dismissal on pleadings), or when the plaintiff claims the loss of access to "un-known purchasers," *Asia Inv. Co. v. Borowski*, 133 Cal. App. 3d 832, 841 (1982); *see Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 524 (1996) (interference tort does not protect the "speculative expectation that a potentially beneficial relationship will eventually arise").

The Complaint fails those pleading requirements. As explained above (*see supra* at 5–9), Plain-tiff never offered linked-out payments; merely "intends" to at some unspecified future point, Compl. ¶ 18; never plausibly pleads that this option would have saved it money; admits that even had it offered linked-out payments, customers would have retained a "choice" whether to use them, *id.* ¶ 3; and never pleads how many customers would have used this hypothetical linked-out payment option or why they would have done so. Indeed, a key question to be resolved, according to Plaintiff's own allegations, is

"[w]hether" it was even "harmed," given the complexities of consumer behavior. *Id.* ¶ 68(d).

Plaintiff's claim is thus far afield from the typical tortious-interference scenario involving a contract with a known counterparty to achieve a determinable economic expectancy. *Korea Supply Co.*, 29 Cal. 4th at 1164. Quite the opposite: Far from alleging "specific facts" to substantiate the loss of an "almost certain" benefit, *Republican Nat'l Comm.*, 742 F. Supp. 3d at 1122, the Complaint results in precisely the "high degree of uncertainty" that dooms tortious interference claims, *Roy Allan Slurry, Inc.*, 2 Cal. 5th at 519. California courts have not hesitated to dismiss complaints containing analogous pleading defects. *See, e.g.*, *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 639 (2021) ("Merely referring to unidentified 'repeat buyers' is insufficient, when there are no facts to show that the unidentified buyers were likely to purchase the unidentified listings that were supposedly 'hidden.'").

### b.    Plaintiff Pleads No Independently Wrongful Acts.

The Complaint also fails to plead that Apple engaged in any independently wrongful act separate from the alleged interference itself. To distinguish lawful competitive behavior from illegitimate interference, the "plaintiff must plead that the defendant engaged in an independently wrongful act." *Korea Supply Co.*, 29 Cal. 4th at 1158; *see Metro Servs. Grp. v. Travelers Cas. & Sur. Co. of Am.*, 2021 WL 2633416, at *5 (N.D. Cal. June 25, 2021) (Gonzalez Rogers, J.). In other words, the defendant's behavior must not only interfere with an economic relationship, but also must be "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal. 4th at 1159.

The Complaint pleads no independently wrongful act. Plaintiff complains that Apple sought to "illicitly retain [its] revenue stream," Compl. ¶ 4, but a purportedly "improper motive" alone cannot demonstrate an independently wrongful act for purposes of an interference claim, *Korea Supply Co.*, 29 Cal. 4th at 1158. And the Complaint makes no attempt to show that Apple transgressed "some constitutional, statutory, regulatory, common law, or other determinable legal standard," *id.* at 1159, aside from the *Epic* Injunction. *See* Compl. ¶ 75. As explained, *see supra* at 11–12, Plaintiff is not entitled to collaterally enforce that Injunction in a separate lawsuit for damages. Plaintiff therefore fails to identify any applicable legal standard in support of its interference claim.

### c.    The DPLA Bars Plaintiff From Asserting Non-Contractual Causes Of Action For Economic Loss.

Similarly, Plaintiff fails to identify any recognized "legal duty" that Apple violated—a prerequisite for tort liability. *Rattagan*, 17 Cal. 5th at 37.  Identifying such a duty is crucial when the parties' relationship is governed by an express contract and the plaintiff, as here, sues for economic loss.  That is because California's economic-loss rule generally bars parties to a contract from recovering "damages that are solely monetary" through anything other than a breach-of-contract claim.  *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021).  An extra-contractual claim for economic loss is permitted only if a plaintiff can demonstrate the "violation of some independent duty arising in tort." *Id.*; *see, e.g.*, *Ace Am. Ins. Co. v. Accellion, Inc.*, 2022 WL 2341155, at *6 (N.D. Cal. Apr. 11, 2022) (Gonzalez Rogers, J.) (dismissing claim that was "not independent of" underlying contract).

Yet the only source of duty Plaintiff conjures—the Injunction—is plainly deficient.  Apple does not owe a duty *to Plaintiff* to abide by the Injunction.  As explained above, Plaintiff is neither a party to *Epic* nor an intended beneficiary of the Injunction.  And Plaintiff offers no backstop to remedy that defect.  Plaintiff does not assert a breach-of-contract claim, nor could it.  Apple received exactly what the DPLA entitles it to—commissions for in-app purchases.  Having entered the DPLA with Apple, Plaintiff is limited to enforcing "such obligations as each party voluntarily assumed." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 517 (1994).  Nor is there any basis to imply some duty *beyond* the DPLA or the U.S. StoreKit Addendum to the DPLA, whereby Apple would owe Plaintiff some special duty to facilitate external links.  Apple is not a fiduciary, nor does it owe Plaintiff a professional standard of care; much less do any other recognized "special duties" apply here. *Progressive W. Ins. Co. v. Superior Ct.*, 135 Cal. App. 4th 263, 277 (2005).  Plaintiff cannot invent a tort duty to facilitate a standalone case where precedent forecloses its ability to rely on the Injunction directly.

This case illustrates why courts do not permit tort claims for economic loss where the challenged conduct is authorized by contract.  Were Plaintiff's theory accepted, any new Guideline that might affect a developer's revenue, even if permitted by the DPLA, could be labeled "tortious" and be used as a springboard for litigation.  And *any* antitrust injunction against a tech platform would invite suit from third-party developers for alleged non-compliance.  That would gut the economic-loss rule

Gibson, Dunn & Crutcher LLP

and erase the line between contract and tort. California law does not allow that result.

### C. The Complaint's Class Allegations Should Be Struck Under Rule 12(f).

Even if the Court concludes that Plaintiff can proceed on some of its claims, the Court should nonetheless strike Plaintiff's class allegations under Rule 12(f) because it is facially apparent that "a class action cannot be maintained on the facts alleged." *Sanders*, 672 F. Supp. 2d at 990. Plaintiff seeks certification of both injunctive and damages classes. *See* Compl. ¶ 63. But the threshold requirements for either are unsatisfied.

*No Injunctive Class.* The Complaint never actually requests an injunction or even a declaratory judgment. *See* Compl. Prayer for Relief. But Plaintiff does (vaguely) suggest that it seeks certification of an injunctive class under Rule 23(b)(2), and possibly under Rule 23(b)(1). *See id.* ¶ 63 (broadly citing Rule 23(b)(1), (2), and (3) with no explanation). To be clear: as a matter of law, neither basis for an injunctive class is available here. Rule 23(b)(1)(A) does not permit certification in an "action for damages," *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001), and Rule 23(b)(2) likewise does not permit certification "when each class member would be entitled to an individualized award of monetary damages," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011). Nor does the Complaint describe the "contours of an injunction that would provide relief to the whole class." *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014). Instead, Plaintiff's remedial theory turns entirely on the notion that Apple must pay money for commissions it allegedly wrongfully obtained. *See* Compl. Prayer for Relief. The injunctive-class allegations should be struck.

*No Rule 23(b)(1)(B) Damages Class.* Certification under Rule 23(b)(1)(B) is similarly inappropriate. That Rule is narrowly construed because of its mandatory consequences on absent class members. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845–46 (1999). It applies only where "separate actions inescapably will alter the substance of the rights of others having similar claims." *McDonnell-Douglas Corp. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975) (quotation marks omitted). In practical terms, Rule 23(b)(1)(B) is restricted to "limited fund" scenarios—where a capped pool must be distributed among claimants pro rata—because distribution of a zero-sum fund to some individuals necessarily prejudices others with competing claims. *Zinser*, 253 F.3d at 1197. But Plaintiff identifies no such fund, never suggests Apple is "[in]solvent" (nor could it), and makes

Gibson, Dunn &
Crutcher LLP

no attempt to explain why this Rule applies here. *Id.* These allegations should also be struck.

***No Rule 23(b)(3) Damages Class.*** Finally, the Complaint seeks certification of a damages class under Rule 23(b)(3). That rule requires not just common, classwide "questions of law or fact" but also that those questions "predominate over any questions affecting only individual members" of the class. Fed. R. Civ. P. 23(b)(3).[3] The predominance standard is "far more demanding" than commonality alone—and bars certification where there are a "great[] number of questions peculiar" to individual class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). A proposed class also fails predominance when the plaintiff "cannot prove that damages resulted from the defendant's conduct" for portions of the class. *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020).

Plaintiff's proposed damages class fails those standards. "Calculating the damages" for the sort of harm at issue here was too "speculative" even on an *individual* basis in *Epic*, which was the only reason an injunction could issue there in the first place. 67 F.4th at 1003. Plaintiff's classwide damages theory, premised on a hypothetical alternate universe, turbocharges that problem. While it is "entirely speculative and beyond the competence of a judicial proceeding to create in hindsight a technological universe that never came into existence"—and "even more speculative to determine the relevant benefits," including "monetary value," that might have resulted—doing so as to *thousands* of developers is infinitely more complicated still. *Kloth v. Microsoft Corp.*, 444 F.3d 312, 324 (4th Cir. 2006).

This Court need not undertake that Sisyphean task because Plaintiff's invitation to do so is riddled with procedural flaws. Its proposed class includes *all* app developers who "offered in-app products (including subscriptions) for a non-zero price during the Class Period" (that is, after January 17, 2024). Compl. ¶¶ 64–65. But it contains no requirement that class members ever intended or wanted to offer linked-out payments. The proposed class is thus "defined so broadly" as to sweep in developers who were content with in-app payments, never had any intention of offering linked-out payments, and suffered no possible injury from Apple's purported suppression of linked-out payments. *Castillo*, 980 F.3d at 730 (rejecting overbroad class that included uninjured members).

Even among developers who might have wished to offer linked-out payments, individualized

---

[3] Though Apple focuses on predominance here, it reserves all rights to challenge class certification on additional bases at appropriate stages of the case.

issues abound on the face of the Complaint. For example, developers would vary in:

- Whether, when, and for how many apps they sought to implement linked-out payments;
- How they would have implemented link-outs, which the Complaint says would have been non-standardized and independently designed, Compl. ¶¶ 46–47;
- How they would have priced link-out transactions;
- Whether their implementation would have been attractive enough to shift consumer behavior;
- If so, how many customers would have shifted their behavior;
- The rates charged by whichever payment-processing service the developer elected to use, which the Complaint admits can vary, *id.* ¶ 30; and
- Whether they (especially small developers) would have saved money after expending the costs to design and implement linked-out payments, including payment of external processing fees.

These inquiries cannot be answered on a classwide basis. In short, because of the layers of variation among class members, determining whether and to what extent any given class member was economically harmed "would require" an enormous series of "highly individualized inquiries." *Castillo*, 980 F.3d at 730. That defeats predominance on the face of the Complaint and precludes certification under Rule 23(b)(3). These allegations, too, should be struck.

**D.    This Case Should Be Stayed Pending Resolution Of The *Epic* Appeal.**

The Court should also stay all further proceedings—including, if it wishes, this motion to dismiss—until the Ninth Circuit's mandate issues in the expedited appeal in *Epic Games, Inc. v. Apple Inc.*, No. 25-2935 (9th Cir.). That appeal concerns the meaning and enforceability of the same Injunction on which Plaintiff's claims depend. Its resolution will almost certainly clarify—or foreclose—key claims in this case, and it may materially alter the legal framework for evaluating Apple's threshold defenses. At a minimum, it is likely to narrow the scope of discovery and the legal issues in dispute. A stay is thus warranted—whether now (as an alternative to deciding this motion to dismiss) or after this motion is decided.

Courts have broad discretion to "stay proceedings" where doing so would promote "economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A court may "find it is efficient for its own docket and the fairest course for the parties to enter

a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Robinson v. Dignity Health*, 2016 WL 7102832, at *2 (N.D. Cal. Dec. 6, 2016) (Gonzalez Rogers, J.) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)).  In deciding whether to exercise its discretion, a court assesses "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Id.* (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  All three factors strongly favor a stay here.[4]

First, and most crucially, staying this case until *Epic* is resolved would simplify the issues and promote the orderly course of justice.  "Considerations of judicial economy are highly relevant" in evaluating this factor.  *Prescott v. Nestle USA, Inc.*, 2020 WL 7053317, at *5 (N.D. Cal. Nov. 25, 2020).  All three of Plaintiff's claims are built on Apple's alleged failure to comply with the Injunction issued in *Epic* after the 2021 bench trial.  Its theory relies not just on the existence of that Injunction, but on the interpretation of its scope reflected in this Court's April 2025 contempt order—an order now on expedited appeal.  Setting aside the merits of that order here, the Ninth Circuit may ultimately adopt a different view of what the Injunction required and whether Apple violated it.  If so, that ruling may eliminate or at least narrow Plaintiff's claims, thus "simplify[ing] issues, proof, and questions of law." *In re RH S'holder Derivative Litig.*, 2019 WL 580668, at *4 (N.D. Cal. Jan. 23, 2019) (Gonzalez Rogers, J.).  The likelihood that "major issues in this case will be clarified by a ruling" in *Epic* supports a stay.  *Phan*, 2023 WL 7597464, at *4; *cf. Grecia v. Adobe Inc.*, 2018 WL 6523983, at *3 (N.D. Cal. Dec. 12, 2018) (Gonzalez Rogers, J.) (granting stay where appellate "ruling will directly and precedentially inform this Court's analysis"); *Robinson*, 2016 WL 7102832, at *2 (granting stay given "high likelihood" that decision in related case would "affect the decision" on plaintiff's claims).

Second, forcing the parties to press forward now would impose significant burdens, further supporting a stay.  Litigating class allegations, responding to discovery, and engaging in potentially

---

[4]  The standard for stays pending decision in a "separate action" is "different" than the standard for stays "pending an appeal *in the same action*." *Robledo v. Randstad US, LP*, 2017 WL 4934205, at *4 (N.D. Cal. Nov. 1, 2017).  The standard applicable here does *not* involve assessing the "likelihood of success" in *Epic*.  *Phan v. Transamerica Premier Life Ins. Co.*, 2023 WL 7597464, at *4 (N.D. Cal. Nov. 13, 2023).  And staying this case poses no risk of Apple's underlying conduct continuing.

unnecessary motions practice would require substantial time and expense by Apple and the Court alike. Those "efforts" could be "rendered moot and unnecessary" if the Ninth Circuit reverses or narrows the contempt ruling. *Phan*, 2023 WL 7597464, at \*4 (holding that "both parties and the Court would be harmed if the stay is denied"). Denying a stay in such circumstances therefore "risks forcing the parties to expend resources that could have been avoided." *Robledo*, 2017 WL 4934205, at \*4. Moreover, if this Court issues rulings that turn out to "conflict[]" with the Ninth Circuit's eventual decision in *Epic*, including on possible privilege issues, the Court would "need to reconsider its ruling[s]," further wasting judicial resources. *Phan*, 2023 WL 7597464, at \*4. Apple has also requested reassignment in *Epic*, and it makes little sense for the Court to devote resources to this related case if it travels with the *Epic* reassignment. Avoiding such wasteful outcomes is precisely the role of a discretionary stay.

Third, Plaintiff, by contrast, would suffer no material harm from a stay. This case remains at the pleading stage. No discovery has begun, no class has been certified, and no deadlines have been set. Plaintiff identifies no time-sensitive interest that would be impaired by a short delay. There is no claim of ongoing harm, and no form of urgent relief requested. In any event, as this Court has recognized, delay alone does not defeat a stay. *See SST Millennium LLC v. Mission St. Dev. LLC*, 2019 WL 2342277, at \*5 (N.D. Cal. June 3, 2019) (Gonzalez Rogers, J.) (harm from delay minimal where separate proceedings "likely will conclude within a reasonable time"); *see also McElrath v. Uber Techs., Inc.*, 2017 WL 1175591, at \*5 (N.D. Cal. Mar. 30, 2017) (any harm resulting from stay pending Supreme Court decision would be "minimal"). Moreover, the "Ninth Circuit has made clear" that "monetary recovery cannot serve as the foundation for the denial of a stay." *Robledo*, 2017 WL 4934205, at \*3 (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1100 (9th Cir. 2005)).

Because staying this case would promote judicial efficiency, reduce unnecessary burdens, and clarify the governing legal framework, the Court should exercise its discretion to stay all further proceedings—including, if it wishes, this motion to dismiss—pending final resolution of the *Epic* appeal.

## V.    CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice under Rules 12(b)(1) and 12(b)(6) and strike Plaintiff's class allegations under Rule 12(f) or, in the alternative, stay proceedings pending issuance of the mandate in *Epic*.

1

2 Dated:  June 30, 2025                                    GIBSON, DUNN & CRUTCHER LLP

3

4                                                          */s/ Julian W. Kleinbrodt*
                                                          Julian W. Kleinbrodt

5                                                          *Attorney for Defendant Apple Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT APPLE INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 4:25-cv-03858-YGR