DANIEL G. SWANSON, SBN 116556
    dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:     213.229.7000
Facsimile:     213.229.7520

CYNTHIA E. RICHMAN (*pro hac vice*)
    crichman@gibsondunn.com
ZACHARY B. COPELAND (*pro hac vice*)
    zcopeland@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone:     202.955.8500
Facsimile:     202.467.0539

JULIAN W. KLEINBRODT, SBN 302085
    jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:     415.393.8200
Facsimile:     415.393.8306


*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| PURE SWEAT BASKETBALL INC. and NFP CHARTING ONLINE, LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 4:25-cv-03858-YGR<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT OR STAY PROCEEDINGS**<br><br>**Hearing:**<br>Date:     August 25, 2026<br>Time:     9:00 AM<br>Place:     Courtroom 1<br>Judge:     Hon. Yvonne Gonzalez Rogers |

Gibson, Dunn &
Crutcher LLP

**NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

**PLEASE TAKE NOTICE THAT** on August 25, 2026, at 9:00 AM, in Courtroom 1, Fourth Floor, before the Honorable Yvonne Gonzalez Rogers, Defendant Apple Inc., by and through its counsel of record, will and hereby does move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss with prejudice the Amended Complaint filed by Plaintiffs Pure Sweat Basketball Inc. and NFP Charting Online, LLC, or in the alternative to stay proceedings pending issuance of a certified copy of the judgment in *Apple Inc. v. Epic Games, Inc.*, No. 25-1311 (U.S.).  This Motion is supported by this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; all documents on file in this action; argument of counsel; and such other matters as the Court may consider.

Dated:  July 2, 2026                                          GIBSON, DUNN & CRUTCHER LLP


                                                              */s/ Julian W. Kleinbrodt*
                                                              Julian W. Kleinbrodt

Gibson, Dunn & Crutcher LLP

**STATEMENT OF ISSUES TO BE DECIDED**

I.      Whether the Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because:

   A.   Plaintiffs' claims are precluded by the settlement agreement in *Cameron v. Apple Inc.*, No. 4:19-cv-03074 (N.D. Cal.) (all Counts);

   B.   The Complaint fails for the threshold reasons that (i) Plaintiffs do not allege any actual and concrete injury traceable to Apple, as required for Article III standing (all Counts); and (ii) Plaintiffs improperly seek to enforce the injunction in *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-5640 (all Counts).

   C.   Plaintiffs' claims fail for multiple, independent reasons:

      1.   Plaintiffs' equitable claims (i) are precluded by the parties' express contract; (ii) do not constitute standalone causes of action under California law; and (iii) fail on the merits.

      2.   Plaintiffs fail to plausibly plead facts necessary to support a claim for tortious interference with business expectancy, including (i) the loss of an almost-certain economic benefit, (ii) an independently wrongful act, and (iii) an extracontractual duty to prevent pure economic loss (Count III).

II.     Whether this case should be stayed in light of the Supreme Court's grant of certiorari in *Apple Inc. v. Epic Games, Inc.*, No. 25-1311 (U.S.).

Gibson, Dunn & Crutcher LLP

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ............................................................................................................... 2

    A.    The App Store ......................................................................................................... 2

    B.    Small Developers Settle, Agreeing To Apple's "[C]ommission [S]tructure" .............. 3

    C.    Pure Sweat Sues In The Wake Of The *Epic Games* Contempt Finding ...................... 4

    D.    Plaintiffs' Amended Complaint ................................................................................. 5

III.  LEGAL STANDARD ........................................................................................................ 7

IV.   ARGUMENT .................................................................................................................... 7

    A.    The *Cameron* Settlement Bars Plaintiffs' Claims ...................................................... 7

    B.    Plaintiffs' Claims Have Multiple Threshold Defects ................................................ 11

        1.    Plaintiffs Lack Standing To Pursue Their Claims ........................................... 11

            a.    Plaintiffs Cannot Claim Injury From An Unencountered Restriction ...................................................................................... 12

            b.    The Claims' Speculative Nature Defeats Concrete, Traceable Injury ........................................................................................... 14

        2.    Plaintiffs Are Nonparties To *Epic* And Cannot Enforce The Injunction ........ 15

    C.    Plaintiffs Fail To State A Claim .............................................................................. 16

        1.    Plaintiffs' Equitable Claims Fail On Multiple Grounds (Counts I and II) ...... 17

            a.    The DPLA Bars Plaintiffs' Equitable Claims (Counts I and II) ......... 17

            b.    Plaintiffs' Constructive Trust Claim Fails On The Merits (Count I) ......................................................................................... 18

            c.    Unjust Enrichment Is Not A Standalone Claim (Count II) ................. 21

        2.    Count III Fails Because Plaintiffs Do Not Plausibly Allege Tortious Interference With Any Business Expectancy .................................................. 21

            a.    Plaintiffs Fail To Plausibly Allege The Loss Of Practically Certain Economic Benefits .............................................................. 21

            b.    Plaintiffs Identify Neither an Independently Wrongful Act Nor Any Tort Duty Supporting an Economic-Loss Claim ....................... 23

    D.    This Case Should Be Stayed Pending Resolution Of *Epic* ...................................... 25

V.    CONCLUSION ............................................................................................................... 25

i

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Am. Ins. Co. v. Accellion, Inc.*,
  2022 WL 2341155 (N.D. Cal. Apr. 11, 2022) ..................................................................................24

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004) ........................................................................................................7

*Adams v. Wells Fargo Bank, N.A.*,
  2015 WL 1434599 (N.D. Cal. Mar. 30, 2015) ..............................................................................10

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ....................................................................................................................24

*Asia Inv. Co., Ltd. v. Borowski*,
  133 Cal. App. 3d 832 (1982) .........................................................................................................22

*Bain v. Cal. Tchrs. Ass'n*,
  891 F.3d 1206 (9th Cir. 2018) ......................................................................................................12

*Barrientos v. Wells Fargo Bank, N.A.*,
  633 F.3d 1186 (9th Cir. 2011) ......................................................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................7, 21

*Berlanga v. Univ. of S.F.*,
  100 Cal. App. 5th 75 (2024) ..........................................................................................................17

*BGJ Assocs., LLC v. Superior Ct.*,
  75 Cal. App. 4th 952 (1999) ..........................................................................................................19

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
  94 Cal. App. 4th 151 (2001) ..........................................................................................................18

*Carney v. Adams*,
  592 U.S. 53 (2020) ........................................................................................................................12

*Cedar Park Assembly of God of Kirkland v. Kreidler*,
  130 F.4th 757 (9th Cir. 2025) ..................................................................................................11, 14

*City of Oakland v. Oakland Raiders*,
  83 Cal. App. 5th 458 (2022) ..........................................................................................................21

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .......................................................................................................................15

*Communist Party v. 522 Valencia, Inc.*,
  35 Cal. App. 4th 980 (1995) ..........................................................................................................18

Gibson, Dunn &
Crutcher LLP

ii

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Crown Imps., LLC v. Superior Ct.*,
  223 Cal. App. 4th 1395 (2014)................................................................................................22

*Davies v. Krasna*,
  14 Cal. 3d 502 (1975) .............................................................................................................18

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010)................................................................................................18

*Eisenberg v. Alameda Newspapers, Inc.*,
  74 Cal. App. 4th 1359 (1999)..................................................................................................18

*Epic Games, Inc. v. Apple Inc.*,
  161 F.4th 1162 (9th Cir. 2025)..........................................................................1, 5, 15, 19, 20

*Epic Games, Inc. v. Apple Inc.*,
  2025 WL 1260190 (N.D. Cal. Apr. 30, 2025) ..........................................................................5

*Epic Games, Inc. v. Apple Inc.*,
  559 F. Supp. 3d 898 (N.D. Cal. 2021) ......................................................................................4

*Epic Games, Inc. v. Apple Inc.*,
  67 F.4th 946 (9th Cir. 2023).............................................................................2, 4, 14, 15, 22

*Everett v. Mountains Recreation & Conservation Auth.*,
  239 Cal. App. 4th 541 (2015)..................................................................................................21

*Falkowski v. Imation Corp.*,
  132 Cal. App. 4th 499 (2005)..................................................................................................18

*Fischer v. Machado*,
  50 Cal. App. 4th 1069 (1996)..................................................................................................19

*George v. eBay, Inc.*,
  71 Cal. App. 5th 620 (2021)....................................................................................................23

*Gonzales v. JPMorgan Chase Bank, N.A.*,
  2021 WL 1091886 (N.D. Cal. Mar. 22, 2021)........................................................................11

*Greenstein v. Noblr Reciprocal Exch.*,
  585 F. Supp. 3d 1220 (N.D. Cal. 2022) ..................................................................................14

*Hartman v. Summers*,
  120 F.3d 157 (9th Cir. 1997)..............................................................................................12, 13

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010).....................................................................................................8

*Howard v. Am. Online Inc.*,
  208 F.3d 741 (9th Cir. 2000).....................................................................................................8

iii

NOTICE OF MOTION & DEFENDANT APPLE INC.'S MOTION TO DISMISS OR STAY
CASE NO. 4:25-cv-03858-YGR

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Kelly v. Wenger*,
822 F.3d 1085 (9th Cir. 2016)...............................................................................................7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)...............................................................................................................7

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ..............................................................................19, 20, 21, 23, 24

*Lance Camper Mfg. Corp. v. Republic Indemn. Co.*,
44 Cal. App. 4th 194 (1996)..................................................................................................17

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)..............................................................................................................25

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005)...............................................................................................25

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).........................................................................................................12, 14

*Madsen v. Boise State Univ.*,
976 F.2d 1219 (9th Cir. 1992)..........................................................................................12, 13

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994)..............................................................................................................24

*Malfatti v. Mortg. Elec. Registration Sys.*,
2012 WL 440718 (N.D. Cal. Feb. 10, 2012).........................................................................18

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011).................................................................................................7

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004).................................................................................................21

*Meland v. Weber*,
2 F.4th 838 (9th Cir. 2021)......................................................................................................7

*Michaelian v. State Comp. Ins. Fund*,
50 Cal. App. 4th 1093 (1996)...........................................................................................19, 20

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001)....................................................................................................7

*Optional Cap., Inc. v. DAS Corp.*,
222 Cal. App. 4th 1388 (2014)...............................................................................................20

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) ..........................................................................................................21

Gibson, Dunn &
Crutcher LLP

NOTICE OF MOTION & DEFENDANT APPLE INC.'S MOTION TO DISMISS OR STAY
CASE NO. 4:25-cv-03858-YGR

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Peterson v. Highland Music, Inc.*,
    140 F.3d 1313 (9th Cir. 1998)......................................................................................................16

*Pinkert v. Schwab Charitable Fund*,
    48 F.4th 1051 (9th Cir. 2022)......................................................................................................12

*Portnoy v. United States*,
    507 F. App'x 736 (9th Cir. 2013) .................................................................................................8

*Progressive W. Ins. Co. v. Superior Ct.*,
    135 Cal. App. 4th 263 (2005)......................................................................................................24

*Rattagan v. Uber Techs., Inc.*,
    17 Cal. 5th 1 (2024) ....................................................................................................................23

*Rattagan v. Uber Techs., Inc.*,
    19 F.4th 1188 (9th Cir. 2021)................................................................................................23, 24

*Republican Nat'l Comm. v. Google LLC*,
    742 F. Supp. 3d 1099 (E.D. Cal. 2024).................................................................................22, 23

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006)......................................................................................................10

*Robledo v. Randstad US, L.P.*,
    2017 WL 4934205 (N.D. Cal. Nov. 1, 2017)..............................................................................25

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
    2 Cal. 5th 505 (2017) ............................................................................................................22, 23

*Schertzer v. Bank of Am., NA*,
    109 F.4th 1200 (9th Cir. 2024)......................................................................................................8

*Shin v. Wash. Mut. Bank, F.A.*,
    2018 WL 4491185 (N.D. Cal. Sept. 19, 2018) ..........................................................................17

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
    521 F. Supp. 3d 929 (S.D. Cal. 2021)........................................................................................22

*Somers v. Apple Inc.*,
    729 F.3d 953 (9th Cir. 2013)........................................................................................................7

*Stansfield v. Starkey*,
    220 Cal. App. 3d 59 (1990).........................................................................................................19

*Thomas v. Anchorage Equal Rts. Comm'n*,
    220 F.3d 1134 (9th Cir. 2000).....................................................................................................14

*Tritz v. U.S. Postal Serv.*,
    721 F.3d 1133 (9th Cir. 2013).......................................................................................................8

Gibson, Dunn &
Crutcher LLP

v

NOTICE OF MOTION & DEFENDANT APPLE INC.'S MOTION TO DISMISS OR STAY
CASE NO. 4:25-cv-03858-YGR

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ...................................................................................................15, 16, 24

*Turtle Island Restoration Network v. U.S. Dep't of State*,
   2010 WL 2836911 (N.D. Cal. July 19, 2010) ..........................................................................10

*United Indus., Inc. v. Eimco Process Equip. Co.*,
   61 F.3d 445 (5th Cir. 1995) .......................................................................................................13

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ........................................................................................................3

*Vu v. Cal. Com. Club., Inc.*,
   58 Cal. App. 4th 229 (1997) .......................................................................................................19

*Washington v. FDA*,
   108 F.4th 1163 (9th Cir. 2024) ...................................................................................................15

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) .......................................................................................................23

*Zumbrun v. Univ. of S. Cal.*,
   25 Cal. App. 3d 1 (1972) ............................................................................................................19

**Other Authorities**

NFP Charting Online, LLC 2026 LLC Annual Report, Miss. Sec'y of State (Feb. 11,
   2026), https://tinyurl.com/2ysvktw8 ............................................................................................4

Gibson, Dunn &
Crutcher LLP

## I.   INTRODUCTION

Plaintiff Pure Sweat Basketball, Inc. originally claimed that it was entitled to the return of all commissions it paid to Apple after this Court's Injunction in *Epic Games* became effective on January 17, 2024.  But the Ninth Circuit "decline[d]" to hold that "*all* commissions violate the Injunction" and confirmed that "Apple is entitled to some compensation" from third-party app developers for enabling "linked-out purchases."  *Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1181, 1188 (9th Cir. 2025).  That refutes the central premise of Plaintiffs' case: that app developers are entitled to the return of an undifferentiated mass of all commissions Apple received because of a "ban [on] all commissions."  *Id.* at 1186.  The Supreme Court has since granted certiorari to review the decision finding Apple in contempt of the Injunction—another foundational legal question on which Plaintiffs' claims turn—while leaving undisturbed the Ninth Circuit's holding that not all commissions are unlawful.  *See Apple Inc. v. Epic Games, Inc.*, No. 25-1311 (U.S. June 30, 2026).  Pure Sweat and a new plaintiff, NFP Charting Online, LLC, have now filed an Amended Complaint that neither grapples with *Epic* nor the bevy of legal deficiencies that Apple identified in the original pleading.

*First*, the Amended Complaint continues to ignore altogether the *Cameron* settlement.  *See Cameron v. Apple Inc.*, No. 4:19-cv-03074, Dkt. 491 (N.D. Cal. June 10, 2022).  In that case, Plaintiffs "forever released" "any and all" claims against Apple based on allegations that Apple's App Store commissions are "supracompetitive" or "otherwise set at unlawful amounts."  *Id.* at 43–44.  Plaintiffs also covenanted not to sue, "expressly agree[ing] to the appropriateness of Apple's commission structure." *Id.* at 13.  Plaintiffs could have alleged in *Cameron* that they also were entitled to steer customers within their app to their own payment mechanisms.  Instead, Plaintiffs bargained for and received both monetary relief and the ability to engage in *out-of-app* steering (through "email and other communication services outside their app[s]").  *Id.* at 29.  Plaintiffs cannot now secure broader structural relief that they forwent in *Cameron* in exchange for significant consideration.

*Second*, the Amended Complaint fails to surmount the other threshold obstacles Apple previously identified.  Take Plaintiffs' standing to challenge alleged restrictions that remained in place after the Injunction.  Neither Plaintiff alleges any facts that would show Apple's alleged reluctance to abide by the Injunction frustrated a concrete plan to implement link-outs.  Pure Sweat claims that it "is

launching an updated version of its apps" that will feature linked-out payments and "is inviting" users to subscribe to an upgraded app—without resistance from Apple. Amend. Compl. ¶ 18. NFP Charting similarly says that after it applied to offer linked-out payments, Apple *approved* the proposal. *Id.* ¶ 27. Nor do Plaintiffs explain why they are entitled to seek *de facto* enforcement of the *Epic* Injunction.

*Third*, Plaintiffs' regurgitated causes of action continue to fail on the merits. To start, equitable theories like unjust enrichment and constructive trust are remedies, not causes of action, and none of these claims can proceed where the parties' relationship is governed by contract. Regardless, Plaintiffs also cannot demand in equity *all* commissions paid to Apple without any attempt to segregate out which specific portion of commissions were unlawful—an inequitable windfall inconsistent with the latest *Epic* decision. Finally, Plaintiffs' tortious-interference claim fails because the Amended Complaint identifies no business expectancy that was disrupted and no legal duty that Apple breached.

The Complaint should be dismissed with prejudice. In the alternative, the Court should stay the case pending the Supreme Court's disposition of *Epic*.

## II.    BACKGROUND

### A.    The App Store

"In 2007, Apple entered, and revolutionized, the smartphone market with the iPhone—offering consumers, through a then-novel multi-touch interface, access to email, the internet, and several prein-stalled 'native' apps that Apple had developed itself." *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 966 (9th Cir. 2023). Soon after, Apple opened iPhone to apps created by third-party developers. *Id.* Developers have since been able to "distribute their apps to iOS devices only through Apple's App Store," subject to Apple's review of "security, privacy, content, and reliability." *Id.* at 967. This relationship is "symbiotic": "Apple provides app developers with a substantial consumer base," while "ever-expanding" third-party apps boost Apple products' "consumer appeal." *Id.* at 966.

To distribute apps on the App Store, developers must execute a standard Developer Program Licensing Agreement ("DPLA") with Apple. *Epic Games*, 67 F.4th at 968; *accord* Amend. Compl. ¶ 86. Together, the DPLA and the App Store Review Guidelines (the "Guidelines") govern how

Gibson, Dunn &
Crutcher LLP

NOTICE OF MOTION & DEFENDANT APPLE INC.'S MOTION TO DISMISS OR STAY
CASE NO. 4:25-cv-03858-YGR

developers may distribute and administer their apps using Apple's proprietary tools and software.[1] Although neither document "prohibit[s] app developers from selling content consumable within an app from their own websites," Amend. Compl. ¶ 32, former Section 3.1.1 of the Guidelines previously restricted developers from including in their apps "buttons, external links, or other calls to action that direct[ed] customers to purchasing mechanisms other than in-app purchase," *id.* ¶ 34.

## B. Small Developers Settle, Agreeing To Apple's "[C]ommission [S]tructure"

This is not the first time that Plaintiffs have sued to challenge Apple's commission structure. Pure Sweat was a named plaintiff in *Cameron v. Apple, Inc.*, No. 4:19-cv-03074 (N.D. Cal.).  *See* Dkt. 32-4, ¶¶ 1, 18-20.  On behalf of a putative class of developers, Pure Sweat brought claims against Apple under California's Unfair Competition Law and federal antitrust statutes for the allegedly "supra-competitive 30% commission on the sale of paid apps and in-app products" charged under Apple's "commissions, fees, and pricing structure."  *Id.* ¶¶ 3, 35.

*Cameron* settled shortly after the close of class-certification briefing.  After extensive negotiations, Apple and Pure Sweat signed a Settlement Agreement that gave Pure Sweat and the settlement class—limited to developers earning less than $1 million in U.S. App Store revenue per year during the relevant period—substantial relief. Dkt. 32-5.  In addition to monetary relief, the Settlement Agreement also afforded "Structural Relief," including the new ability to steer purchases to other payment mechanisms through off-app communications, *id.* § 5.1.3, and continued reduced, 15% commissions for small developers, *id.* § 5.1.1.  Pure Sweat called its new ability to steer purchases off-app the "game changer" needed to "reduce commissions paid to Apple," Dkt. 41 at 6, and did not bargain for the ability to institute linked-out payments in-app (or any other "[i]n-app communications"), or to displace the default commission structure applicable to most in-app purchases, Dkt. 32-5, § 5.1.3.

In exchange for those concessions, Pure Sweat and the settlement class waived further claims challenging Apple's commission structure.  First, the Settlement Agreement released "any and all past, present, and future claims" that "arise from the same facts underlying the claims asserted in

---

[1] The DPLA and the Guidelines, *see* Dkts. 32-2, 32-3, may be considered as incorporated by reference in the Complaint, *see* Amend. Compl. ¶¶ 13, 16, 34 & n.8, 86, or as judicially noticeable facts not subject to reasonable dispute, *see United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

Gibson, Dunn & Crutcher LLP

[*Cameron*]," including by "example" "any claim" that Apple's commissions "are supracompetitive, inflated, or otherwise set at unlawful amounts." Dkt. 32-5, § 10.1.  Second, Pure Sweat and the class also assented to a Covenant Not to Sue in which they "expressly agree[d] to the appropriateness of Apple's commission structure" "in light of the structural and monetary relief afforded" by the settlement. *Id.* § 5.2.  And third, the parties agreed that the "Settlement Agreement may be pleaded as a full and complete defense" to any "proceeding which may be instituted, prosecuted, or attempted for claims" subject to either the Covenant Not to Sue or the release. *Id.* § 11.3.

Although the *Cameron* settlement figured prominently in the parties' prior round of briefing, *see* Dkts. 49–52, the Amended Complaint has nothing to say about why this action may proceed in the face of the settlement agreement.  As a named plaintiff in *Cameron*, Pure Sweat is bound by the settlement agreement.  NFP Charting's allegations indicate that it too is a member of the settlement class:  It sold in-app content and "paid Apple thousands of dollars in commissions." Amend. Compl. ¶¶ 20, 26; *see* Dkt. 32-5 § 1.27 (defining class as U.S. developers who sold in-app content "for a non-zero price … [resulting in] Proceeds equal to or less than $1,000,000.00 … in every calendar year" from 2015 to the settlement); NFP Charting Online, LLC 2026 LLC Annual Report, Miss. Sec'y of State (Feb. 11, 2026), https://tinyurl.com/2ysvktw8 (describing NFP Charting as a small company with no president, vice-president, secretary, treasurer, or operating agreement).  NFP Charting does not allege it opted out of the *Cameron* settlement or otherwise is not bound by it.

### C.    Pure Sweat Sues In The Wake Of The *Epic Games* Contempt Finding

In 2020, Epic Games, Inc. challenged Apple's App Store business practices, particularly its distribution and in-app payment ("IAP") requirements, under federal and California law.  *See Epic Games*, 67 F.4th at 966.  After a bench trial, the Court rejected Epic's federal and state antitrust claims. *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1007 (N.D. Cal. 2021).  As to Epic's claim under California's Unfair Competition Law ("UCL"), the Court held that former Section 3.1.1 was "unfair" and entered an injunction (the "Injunction") providing, in relevant part, that:

> Apple Inc. and its officers, agents, servants, employees, and any person in active concert or participation with them ("Apple"), are hereby permanently restrained and enjoined from prohibiting developers from . . . including in their apps and their metadata buttons, external links, or other calls to action that direct customers to purchasing mechanisms, in addition to In-App Purchasing.

4

Gibson, Dunn & Crutcher LLP

*Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-5640 (N.D. Cal. Sept. 10, 2021), ECF No. 813.

Apple responded to the Injunction by creating a "[L]ink [E]ntitlement program," *Epic Games, Inc. v. Apple Inc.*, 2025 WL 1260190, at *9, *11 (N.D. Cal. Apr. 30, 2025), through which developers could apply to implement linked-out payments subject to a reduced commission rate relative to IAP payments. *See id.* Epic moved to enforce the Injunction in March 2024, asserting that Apple's changes were insufficient to comply with the Injunction. *See id.* at *7–27. After an evidentiary hearing, the Court held Apple in civil contempt and ordered Apple to stop enforcing its Link Entitlement program. *Id.* at *1. Apple immediately complied with the Court's order and appealed that ruling. *See Epic Games, Inc. v. Apple Inc.*, No. 25-2935 (9th Cir.).

Two days after the contempt order, Pure Sweat Basketball filed its original complaint in this suit. Dkt. 1, ¶ 14. The parties thereafter fully briefed a motion to dismiss. *See* Dkts. 32, 40, 41. Apple alternatively requested that the case be stayed pending resolution of its appeal of this Court's contempt order. *See* Dkt. 32 at 23. Following a hearing on the motion to dismiss, *see* Dkt. 43, the Court ordered supplemental briefing concerning the effect of the *Cameron* settlement, Dkt. 44. The Court thereafter granted Apple's request for a stay pending issuance of the mandate in *Epic*. *See* Dkt. 53.

In *Epic*, the Ninth Circuit affirmed in part and reversed in part this Court's contempt order. 161 F.4th at 1172. The Ninth Circuit held that this Court's contempt finding was not an abuse of discretion and upheld various aspects of the Court's underlying order. But the Ninth Circuit "decline[d]" to hold "that *all* commissions violate the Injunction." *Id.* at 1181. It therefore rejected a "commission prohibition," *id.* at 1183, and reversed the contempt order to the extent that it "prohibited all commissions and fees," *id.* at 1187. As it recognized, "Apple is entitled to some compensation for the use of its intellectual property" by third parties "to consummate linked-out purchases," *id.* at 1187–88, and thus is entitled "to charge some commission on linked-out purchases," *id.* at 1181 n.4. The Ninth Circuit issued its mandate in May 2026, and the Supreme Court granted Apple's Petition for a Writ of Certiorari the next month.

### D.    Plaintiffs' Amended Complaint

In the Amended Complaint, Pure Sweat attempted to shore up some, but not all, of the deficiencies Apple identified in the previous round of briefing. As before, Pure Sweat alleges that it operates

two basketball-training apps on the App Store, one of which features in-app subscription purchases. Amend. Compl. ¶¶ 14–16. But the Amended Complaint still fails to allege that Pure Sweat has ever offered or attempted to offer a linked-out payment option that Apple thwarted within the Class Period. The original Complaint vaguely suggested that Pure Sweat "intend[ed] to modify its apps to offer linked-out payments" in response to the Court's contempt order, entered on April 30, 2025. Dkt. 1 ¶ 18. Those efforts never materialized. So the Amended Complaint now frames "the Ninth Circuit's affirmance" of the contempt order "and the resulting mandate" as the key inflection point. Amend. Compl. ¶ 18. Apparently in response to those developments, Pure Sweat "is launching an updated version of its apps." *Id.* One of those apps (the "Upgraded Pure Sweat app") will feature external links. *Id.* The Amended Complaint alleges Pure Sweat "is inviting" "legacy users" of one app "to subscribe to the Upgraded Pure Sweat app." *Id.* The Amended Complaint does not allege that any customers have accepted such an invitation, nor does it assert that Pure Sweat encountered any resistance from Apple in connection with enabling linkouts in the Upgraded Pure Sweat app.

The Amended Complaint also adds a new plaintiff, NFP Charting. NFP Charting launched a "natural family planning" app on iOS in 2009. Amend. Compl. ¶¶ 20–21. The Amended Complaint alleges that 16 years ago, NFP attempted to offer linked-out payments through its app but that Apple "rejected the app" and "suggested" the app needed to be "reconfigured" to feature IAP. *Id.* ¶¶ 24–25. The Amended Complaint further alleges that after the Ninth Circuit issued its mandate in *Epic*, NFP submitted a "redesigned" version of its app "with a link-out payment feature" that Apple "*approved*." *Id.* ¶ 27 (emphasis added). NFP alleges without elaboration that it "would have taken these steps sooner" but for "the economic and noneconomic restraints" Apple imposed. *Id.* NFP does not point to any other concrete steps it took in the intervening 16-year period (from 2010 to 2026) to implement link-outs—including in the 30 months after the Injunction issued and the 14 months after Apple withdrew all challenged aspects of its Link Entitlement program.

Plaintiffs assert three causes of action: One for constructive trust; a second for unjust enrichment or quasi-contract; and a third for tortious interference with business expectancy. Amend. Compl. ¶¶ 89–123. The Amended Complaint expressly pleads that "[a]ll claims for relief . . . arise" from Apple's purported violation of the Injunction entered in *Epic*. *Id.* ¶ 88. Plaintiffs seek the return of every

Gibson, Dunn &
Crutcher LLP

6

single commission they paid to Apple between January 2024 and "the date of Apple's compliance" with the Injunction, *id.* ¶ 70, apparently on the assumption that *if* Plaintiffs had offered link-outs in that period, *all* customers would have used that option instead, *id.* ¶¶ 78, 101, 104. Plaintiffs seek to represent not just a putative class of developers who actually intended to offer linked-out payments, but "[a]ll developers of any iOS or iPadOS app" distributed through the App Store that "offered in-app products . . . for a non-zero price." *Id.* ¶ 77.

### III. LEGAL STANDARD

"The party invoking federal jurisdiction bears the burden of establishing the elements of standing." *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021) (quotation marks omitted). And "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### IV. ARGUMENT

The Complaint should be dismissed for multiple independent reasons. Plaintiffs' claims are precluded by the *Cameron* settlement agreement (§ IV.A). Neither Plaintiff adequately pleads its Article III standing, and each is attempting to improperly enforce the *Epic* Injunction (§ IV.B). Nor do Plaintiffs plausibly state any claim (§ IV.C). In the alternative, this case should be stayed pending the Supreme Court's decision in *Epic*, which may clarify or foreclose Plaintiffs' claims (§ IV.D).

#### A. The *Cameron* Settlement Bars Plaintiffs' Claims

Courts may force parties "to comply with the terms of [a] settlement agreement" when "the settlement agreement [is] made part of the order of dismissal." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *see also Kelly v. Wenger*, 822 F.3d 1085, 1095 (9th Cir. 2016) (district court retains "ancillary jurisdiction to enforce [a] settlement agreement" when its terms are

"incorporated into the district court's dismissal order"). The Court did just that in *Cameron v. Apple Inc.*, No. 4:19-cv-03074 (N.D. Cal.), by expressly "retain[ing] jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of … the Settlement." Dkt. 32-5 at 16. Moreover, courts may dismiss claims that arise from the same "factual predicate" as a prior case, *Hesse v. Sprint Corp.*, 598 F.3d 581, 590–91 (9th Cir. 2010), because court-approved settlements "have res judicata effect," *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1141 (9th Cir. 2013); *see also Howard v. Am. Online Inc.*, 208 F.3d 741, 747 (9th Cir. 2000) (settlement "unequivocally bars" claims based on identical billing practices); *Portnoy v. United States*, 507 F. App'x 736, 737 (9th Cir. 2013) (dismissal with prejudice "proper[]" where complaint is "barred by the doctrine of res judicata"). On both grounds, Plaintiffs' claims are barred at the threshold given Plaintiffs' participation in the class-action settlement in *Cameron*.

**1.** As Apple previously explained, Plaintiffs "see[k] to profit from the very kind of additional structural relief that [they] waived in *Cameron* when [they] settled for off-app steering and monetary relief." Dkt. 49 at 3. In that settlement, Plaintiffs released "any and all past, present, and future claims" that "arise from the same facts," including but not limited to allegations that "commissions charged by Apple on paid downloads or in-app purchases of digital content (including subscriptions) through the App Store are supracompetitive, inflated, or otherwise set at unlawful amounts." Dkt. 32-5 § 10.1. In the complementary Covenant Not to Sue, Plaintiffs also "expressly agree[d] to the appropriateness of Apple's commission structure" in exchange for the "structural … relief" they received. *Id.* § 5.2. And Plaintiffs further agreed that the Settlement Agreement could "be pleaded as a full and complete defense" to any future suits covered by the release and Covenant Not to Sue. *Id.* § 11.3.

Although Plaintiffs amended their allegations to try to address other flaws with their case, the Amended Complaint continues to ignore *Cameron* altogether—even though this case was related to other App Store litigation at Pure Sweat's request. As Apple explained in its prior supplemental briefing (Dkts. 49, 51), Sections 5.2, 10.1, and 11.3 are interrelated, mutually reinforcing provisions that define a "a full and complete defense." Dkt. 32-5 § 11.3; *see also Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1210 (9th Cir. 2024) ("Contracts are interpreted as a whole 'so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'"). Read together, they reflect

a broad bulwark against "any and all past, present, and future claims" that arise from the facts underlying *Cameron* as well as from any claim challenging "the appropriateness of Apple's commission structure." *Id.* §§ 5.2, 10.1. Put another way, they bar any challenge to Apple's pre-*Cameron* "30% commission on the sale of paid apps and in-app products" (as stated in Section 10.1) as well as the post-*Cameron* commission structure that continued to charge a 30% or 15% headline rate on paid app downloads and certain in-app purchases even while allowing certain steering (as stated in Section 5.2).

These provisions bar Plaintiffs' claims. Start with the equitable "quasi-contract" claim. Amend. Compl. ¶¶ 109–17. Plaintiffs each have an app offering in-app subscription purchases. *Id.* ¶¶ 15, 21. During the time period for which they seek damages, they would have paid Apple's "prevailing commission rates (30% by default and 15% under some programs)"—*i.e.*, the same rates at issue in *Cameron*. *Id.* ¶ 72. Indeed, the Amended Complaint's theory of relief is that Plaintiffs remained subject to the "status quo" and "historica[l] … commission structure" because Apple worked to "ensur[e] that the Injunction had no effect when it became operative." *Id.* ¶¶ 60, 30, 70. Plaintiffs thus seek "restitution" and "disgorgement" of the "transaction fees" (*i.e.*, commissions) they paid under those "prevailing" rates, *id.* ¶¶ 117, 72—the 30% and 15% commissions paid under the very "commission structure" the *Cameron* settlement "expressly" blessed. Dkt. 32-5 § 5.2. Thus, this claim is barred by Sections 5.2, 10.1, and 11.3 of the Settlement Agreement.[2]

Plaintiffs' tortious-interference claim is likewise barred by the *Cameron* settlement. *See* Amend. Compl. ¶¶ 118–123. Plaintiffs say they lost "the economic benefit of receiving direct customer payments" and "the development of direct payment relationships." *Id.* ¶¶ 120–121, Prayer for Relief. Setting aside Plaintiffs' failure to identify any specific, concrete "economic relationships" on which they lost out, *see infra* 21–23, the only specific relief they identify is a request that the Court "comman[d] that Apple relinquish the revenues it illicitly retained"—*i.e.*, the "in-app purchase commissions" Plaintiffs allegedly paid, *id.* ¶¶ 8-9, and which Plaintiffs "expressly" deemed "appropriat[e]" and agreed not to sue over, Dkt. 32-5 § 5.2. Plaintiffs' theory is at bottom that Apple interfered with

---

[2] As noted below, *see infra* 18, Plaintiffs' first "cause of action" for constructive trust concededly is not a standalone claim and is wholly derivative of Plaintiffs' second, "unjust enrichment/quasi-contract" theory. Thus, it is barred under the *Cameron* settlement agreement for the same reasons.

9

Gibson, Dunn & Crutcher LLP

Plaintiffs' business operations because Apple did not further modify its commission structure in response to the *Epic* Injunction, *see* Amend. Compl. ¶ 40, by continuing to subject Plaintiffs to the same commission structure emerging from *Cameron*. *See* Dkt. 48 ("Hr'g Tr.") 21:1–22. Thus, the nub of this claim remains a challenge to the "status quo" commission structure created by the *Cameron* settlement. Amend. Compl. ¶ 60. Accordingly, it also should be dismissed. *See Adams v. Wells Fargo Bank, N.A.*, 2015 WL 1434599, at *2–3 (N.D. Cal. Mar. 30, 2015) (Gonzalez Rogers, J.) (dismissing claim with prejudice because it was "released" as part of a "court-approved class action settlement").

**2.** For similar reasons, Plaintiffs' claims are barred by the doctrine of res judicata. In *Cameron*, Pure Sweat and other developers challenged Apple's App Store commission structure, attacking the allegedly "supra-competitive 30% commission on the sale of paid apps and in-app products" charged under Apple's "commissions, fees, and pricing structure." Dkt. 32-4 ¶¶ 3, 35. The parties settled after extensive negotiations, giving developers like Plaintiffs monetary relief, Dkt. 32-5 § 5.3.1, and significant "Structural Relief," *id.* § 5.1.3. That included the new ability to steer purchases through out-of-app communications, *id.*—which Pure Sweat called the "game changer" to "reduce commissions paid to Apple," Dkt. 41 at 6—as well as continued reduced, 15% commissions for certain developers, Dkt. 32-5 § 5.1.1. Plaintiffs did not opt out or bargain for in-app steering, including through links, or other changes to Apple's commission structure. Dkt. 32-5 § 5.1.3. In other words, Plaintiffs agreed to the "status quo" they now seek to challenge. Amend. Compl. ¶ 60. Plaintiffs' cannot seek broader relief from the same underlying grievance, as res judicata applies where the factual predicate is identical. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006).

To circumvent the settlement's clear terms, Plaintiffs now try to frame their claims around Apple's conduct after the *Epic* Injunction. But the Amended Complaint continues to make clear that Plaintiffs' alleged injury results from the same "prior [commission] regime" challenged in *Cameron*. Amend. Compl. ¶ 39; *see also id.* ¶¶ 15, 30. The only new assertion is that Apple should have further changed those practices in light of the *Epic* Injunction—presupposing the same factual predicate (Apple's commission model) as *Cameron*. A post-settlement court order does not reopen claims the parties already resolved, and a plaintiff "cannot artfully plead [its] theories to elude the res judicata bar of its claims." *Turtle Island Restoration Network v. U.S. Dep't of State*, 2010 WL 2836911, at *1, *4 (N.D.

10

Gibson, Dunn & Crutcher LLP

Cal. July 19, 2010). That is especially important here: While Epic obtained an injunction based on its UCL claim, Plaintiffs specifically *released* their own UCL claim. To allow Plaintiffs to nevertheless piggyback off a different party's claim would undermine the settlement's finality.

The relation history of *Cameron*, *Epic*, and this case confirms their factual overlap. Cases are "related" when they "concern substantially the same parties, property, transaction, or event." Civil L.R. 3-12(a)(1). On Pure Sweat's motion, this Court related this case with *Epic*. *See Epic Games, Inc.*, Dkts. 1537, 1577. And *Cameron* and *Epic* have likewise been related. *Cameron*, Dkt. 107. All three cases have thus been deemed to concern the same transactions or events. That procedural backdrop illustrates the point: Despite new legal theories, Plaintiffs' claims target the continued implementation of the same core practices they challenged in *Cameron*. Their claims therefore should be dismissed with prejudice. *See Gonzales v. JPMorgan Chase Bank, N.A.*, 2021 WL 1091886, at *2–3 (N.D. Cal. Mar. 22, 2021) (Gonzalez Rogers, J.) (dismissing complaint with prejudice on *res judicata* grounds).

### B.    Plaintiffs' Claims Have Multiple Threshold Defects

Plaintiffs' claims also should be rejected because of two threshold flaws. *First*, neither Plaintiff has adequately pleaded standing to sue: Plaintiffs fail to allege any concrete acts to institute linked-out payments that were thwarted by Apple during the Class Period for which they seek damages, *i.e.*, after the Injunction's effective date. *Second*, Plaintiffs are improperly attempting to enforce the *Epic* Injunction and conduct a *de facto* contempt proceeding, even though neither was a party to *Epic*.

### 1.    Plaintiffs Lack Standing To Pursue Their Claims

Article III requires a plaintiff to allege: (1) "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant," rather than the "actions of independent [parties]," and (3) that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cedar Park Assembly of God of Kirkland v. Kreidler*, 130 F.4th 757, 764–65 (9th Cir. 2025). Plaintiffs premise their alleged right to recovery on "Apple's defiance of the Injunction," which became effective on January 17, 2024. Amend. Compl. ¶ 88; *see also id.* ¶ 78 (defining putative class period as running from "January 17, 2024 (the effective date of the Injunction)"). Yet neither Plaintiff pleads that it encountered any obstruction from Apple to institute linked-out payments once the Injunction went into

Gibson, Dunn &
Crutcher LLP

effect. And neither pleads any concrete monetary loss, let alone one that is traceable to Apple's conduct rather than Plaintiffs' own choices or those of independent customers. Plaintiffs' hypothetical and contingent theory of harm falls short of Article III's injury-in-fact and traceability requirements.

a.    **Plaintiffs Cannot Claim Injury From An Unencountered Restriction**

A plaintiff cannot be injured by a restriction it never encountered. *See Carney v. Adams*, 592 U.S. 53, 61 (2020); *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) ("[A] plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself."). Thus, the plaintiff must plead the "details necessary to show that [its] plans" to do so are or were "concrete." *Pinkert v. Schwab Charitable Fund*, 48 F.4th 1051, 1055 (9th Cir. 2022). In cases involving participation in a program (like the link-out entitlement), precedent in this Circuit is clear that "requiring a formal application" to engage in conduct is "the normal prerequisite for bringing a case to court," given that it "creates a record that the individual in question was, indeed, affected by the challenged policy." *Madsen*, 976 F.2d at 1222; *accord Hartman v. Summers*, 120 F.3d 157, 160 (9th Cir. 1997) (faulting litigant for failure "to state any definite plans to file an application"); *Bain v. Cal. Tchrs. Ass'n*, 891 F.3d 1206, 1214 (9th Cir. 2018) (no standing for plaintiff with no "concrete plan" to "return to her old job").

**1.** Pure Sweat does not allege a concrete injury. Pure Sweat's first app, "Pure Sweat Basketball Workouts," offers in-app purchases for subscriptions. Amend. Compl. ¶ 15. But Pure Sweat does not allege it *ever tried* to actually implement link-outs for this app. The only link-out attempt involves a *different* app—Pure Sweat's second, "new Pure Sweat Basketball app." *Id.* ¶¶ 16–17. Pure Sweat alleges that Apple rejected a version of *this* app *in 2023* because it "contained links to purchase content outside of the app." *Id.* At the outset, "[p]ast exposure" that predates the relevant time period—and the allegedly wrongful noncompliance with the *Epic* Injunction—does not give rise to standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). More fundamentally, Pure Sweat "published [this app] without any mechanism for in-app purchases," *id.* ¶ 17, and therefore paid no commissions toward alleged "profits unjustly received and retained by Apple," *id.* Prayer for Relief. In short, the app that pays Apple commissions is one Pure Sweat never tried to convert to link-outs, and the app it long ago tried to convert paid Apple nothing. As a result, Pure Sweat does not allege it paid any commissions to Apple as a result of alleged noncompliance with the Injunction. *Id.* ¶¶ 2, 78, 88.

12

Gibson, Dunn &
Crutcher LLP

In response to that problem, counsel previously assured the Court that an amended complaint could better describe his client's "thought process" about how Pure Sweat had a concrete intention to offer link-outs during the Class Period that Apple's conduct deterred. Hr'g Tr. 24:15. The Amended Complaint delivers no such explanation. Pure Sweat merely alleges that it now—after the *Epic* mandate—"is launching" an "updated version of its apps" that will feature linked-out payments. *Id.* ¶ 18. That is non-responsive to the point raised at argument: the lack of any allegation that Pure Sweat "looked at" a plan to offer link-outs during the Class Period but was deterred when it "realized" that doing so would be uneconomical. Hr'g Tr. 24:9–12. There continues to be no allegation of any concrete plan to reformulate Pure Sweat's business model or to redesign its app until *after* Apple discontinued the challenged requirements, from which point on Pure Sweat has encountered no alleged resistance from Apple in its alleged efforts to roll out an "[u]pgraded" app. Amend. Compl. ¶ 18.

The Amended Complaint therefore comes no closer to alleging Pure Sweat concretely encountered the restrictions it challenges during the relevant time period. That is fatal. In *Madsen*, for example, a student asked his university about a free handicap parking space but was told none were available. 976 F.2d at 1220. Because he then failed to ask for a waiver of the permit fee, the Ninth Circuit found he lacked standing to sue for disability discrimination. *Id.* at 1221–22. A similar example is *Hartman*, where the plaintiff claimed a statute for releasing individuals committed to state hospitals was unconstitutional, but the court found he lacked standing because he did not "assert that he intends to begin, or has begun, the procedure" for release and, therefore, that he was "subject to the release procedure that he complains of." 120 F.3d at 160. This case is in effect the same: Pure Sweat took no alleged steps after the *Epic* Injunction became effective to implement link-outs—until very recently, at which point it has encountered none of the restrictions about which it complains. *See United Indus., Inc. v. Eimco Process Equip. Co.*, 61 F.3d 445, 449 (5th Cir. 1995) (a mere "pessimistic belief that it was not worth attempting" to apply to a challenged program does not establish standing).

**2.** The story for NFP Charting is similar. It allegedly attempted to institute linked-out payments *fourteen years* before the Class Period (in 2010). Amend. Compl. ¶ 25. But it apparently undertook no further, identifiable steps to institute linked-out payments until May 2026—a month before joining this case and well after all of Apple's challenged link-out policies had been lifted. *Id.* ¶ 27. The

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION & DEFENDANT APPLE INC.'S MOTION TO DISMISS OR STAY
CASE NO. 4:25-cv-03858-YGR

Amended Complaint concedes "Apple *approved the redesign*" that same month, resulting in a live app "with a link-out payment option since that time." *Id.* (emphasis added). Far from alleging it was subjected to unlawful action by Apple, NFP Charting concedes that Apple *conformed* to Plaintiffs' view of what the Injunction requires as soon as NFP Charting actually submitted a concrete request for approval. The Amended Complaint is thus wholly devoid of explanation as to how either named plaintiff was injured by Apple's conduct in the period for which the Amended Complaint seeks relief.

Plaintiffs attempt to circumvent the problem by asserting that they "would have taken these steps sooner," *i.e.*, attempting to implement linked-out payments, "had Apple complied with the Injunction from day one and not imposed the economic and noneconomic restraints that have now been set aside." Amend. Compl. ¶¶ 19, 27. But these conclusory assertions are insufficient for Article III standing. Mere "expressed 'intent'" to have done something "can hardly qualify as a concrete plan" to have encountered a legal restriction. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000) (en banc). The fact remains that Plaintiffs have failed to articulate a single step they took to design or implement linked-out payments that Apple thwarted in the Class Period—instead alleging that Apple promptly *approved* link-outs upon request. Amend. Compl. ¶ 27.

### b. The Claims' Speculative Nature Defeats Concrete, Traceable Injury

Plaintiffs have also failed to allege a concrete, traceable injury. Their theory of injury relies on speculative suppositions about whether and to what degree class members would have implemented link outs and consumers would have used them. But an "actual injury" cannot rely on "hypothetical" conjecture. *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1228–29 (N.D. Cal. 2022). Nor is an injury "fairly traceable" to challenged conduct, *Cedar Park Assembly of God*, 130 F.4th at 764–65, when it turns on "the independent action[s] of some third part[ies] not before the court." *Defs. of Wildlife*, 504 U.S. at 560.

Start with the Ninth Circuit's *Epic* decisions, which repeatedly hold that Plaintiffs' theory is speculative. The Ninth Circuit upheld this Court's original injunction because "[c]alculating the damages caused by the anti-steering provision would require a protracted and speculative inquiry" into how users might have responded to alternative payment options, including whether and to what extent "users who multi-home and can therefore substitute" would take advantage of those alternatives. 67 F.4th at

Gibson, Dunn & Crutcher LLP

1003.  The Ninth Circuit then explained that "there is no way to quantify the number of developers who would have implemented external links." *Epic Games, Inc.*, 161 F.4th at 1186.  That is fatal.  And Plaintiffs cannot solve this problem by claiming they are entitled to the undifferentiated entirety of all commissions Apple collected because Apple was entitled "to charge some commission." *Id.* at 1181 n.4.; *see also* 1188.  Plaintiffs allege no non-speculative facts to show whether and how many customers would have even used link-outs, much less the portion of commissions paid under those hypothetical transactions that would represent *unlawful* receipts by Apple.

Far from solving those problems, the Amended Complaint confirms that Plaintiffs' alleged damages depend on "speculation" and "guesswork." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413–14 (2013).  Plaintiffs allege that customers presented with a hypothetical link-out option would have had a "choice between payment options." Amend. Compl. ¶ 3.  That means they *might* have paid externally, or they might have continued to pay in-app.  Plaintiffs fail to explain why many customers wouldn't simply have continued using IAP for any number of reasons, such as convenience or security. *See Epic Games*, 67 F.4th at 997.  And if those consumers would have made in-app purchases regardless, then Plaintiff's commission payments were the result of intervening, independent choices—destroying any link to *Apple's* conduct.  Without any well-pleaded facts to estimate how many users would have behaved differently in the but-for world, Plaintiffs' asserted injuries rest on pure conjecture. *See Washington v. FDA*, 108 F.4th 1163, 1175 (9th Cir. 2024) (no standing where alleged injuries hinged on "a wide range of individualized considerations that are difficult to predict").

### 2.    Plaintiffs Are Nonparties To *Epic* And Cannot Enforce The Injunction

Plaintiffs also are not entitled to enforce the *Epic* Injunction as merely incidental beneficiaries of that decree.  *See* Dkt. 32 at 11–12; Dkt. 41 at 2–3.  The Supreme Court may undermine the premise from which all of Plaintiffs' claims "arise"—that Apple "defi[ed] . . . the Injunction." Amend. Compl. ¶ 88.  Even if it does not, Supreme Court precedent is clear that an "injunction's protection extends only to the suing plaintiff," meaning "that only the plaintiff can enforce the judgment" granting the injunction. *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025).  Thus, *even parties to an injunction* only may enforce it through "an order of contempt," rather than a collateral lawsuit. *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011).  That is important because contempt

Gibson, Dunn & Crutcher LLP

proceedings carry significant procedural protections for the defendant, permitting sanctions "only" if, for example, a violation is shown "by clear and convincing evidence." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998). By premising their entitlement to relief on the Injunction, Plaintiffs in effect claim *greater* rights than even parties to that injunction—the ability to seek monetary relief through a collateral suit presumptively subject only to a preponderance-of-the-evidence standard.

The Amended Complaint only further highlights the lack of any basis for Plaintiffs to pursue this workaround. The original Complaint's theory for enforcement was an allegation that class members were "all … intended beneficiaries of the Injunction." Dkt. 1 ¶ 77. But counsel for Plaintiffs subsequently disclaimed that allegation at the motion-to-dismiss hearing, admitting that class members at best are "incidental beneficiaries" and claiming he did not "know" why the intended-beneficiary allegation was included in the original Complaint. Hr'g Tr. 9:3–6, 9:23–10:1. The Amended Complaint now abandons the allegation. But that elision only makes it all the more clear that Plaintiffs may not premise purported rights to monetary relief on the Injunction, given that Plaintiffs now do not even *claim* to fall within the Injunction's scope. *See CASA*, 606 U.S. at 851–52.

The Amended Complaint's other changes further illustrate how Plaintiffs improperly seek to conduct a *de facto* contempt inquiry through their own damages suit. They define the Class Period as running until "the date of Apple's compliance" with the Injunction, which Plaintiffs claim they will "ascertain … through discovery" into Apple's compliance efforts. Amend. Compl. ¶ 70 & n.57. In other words, Plaintiffs seek an adjudicated finding in *this* case of the date on which Apple, in their view, is finally compliant with the Injunction. And depending on the results of their sought "discovery," Plaintiffs apparently reserve the right to argue that Apple is not in compliance—thereby prolonging the duration of the Class Period and increasing Apple's exposure to Plaintiffs' requested monetary relief. Even if Plaintiffs *had been* parties in *Epic*, they could do all of that only in the context of a tightly regulated contempt proceeding. It is thus doubly inappropriate for Plaintiffs to do so here, when they now present *no* theory about why they are entitled to effectively enforce the Injunction through collateral pursuit of monetary remedies.

### C.    Plaintiffs Fail To State A Claim

Setting aside those problems, Plaintiffs' Amended Complaint also fails to state a claim. The

16

Gibson, Dunn &
Crutcher LLP

parties' express contract, the DPLA, bars Plaintiffs' equitable theories—two of which are not even standalone causes of action. Plaintiffs also fail to plausibly allege the basic requirements for a tortious-interference claim, such as the loss of an almost-certain benefit, the commission of any independently wrongful act, or the presence of any extracontractual duty supporting claims for pure economic loss.

### 1. Plaintiffs' Equitable Claims Fail On Multiple Grounds (Counts I and II)

#### a. The DPLA Bars Plaintiffs' Equitable Claims (Counts I and II)

Plaintiffs allege that the DPLA "applies to the claims asserted by Plaintiffs and the proposed class." Amend. Compl. ¶ 86. And in the prior briefing, Pure Sweat conceded that the DPLA is "a binding contract" that cannot be "circumvent[ed]" in equity and was not breached by Apple. Dkt. 40 at 12. These concessions are fatal to Plaintiffs' equitable theories, none of which may proceed under California law in the face of a valid contract. Counts I and II should be dismissed with prejudice.

Start with Plaintiffs' quasi-contract claim. Under California law, "a claim for quasi-contract 'cannot lie where there exists between the parties a valid express contract covering the same subject matter.'" *Shin v. Wash. Mut. Bank, F.A.*, 2018 WL 4491185, at *10 (N.D. Cal. Sept. 19, 2018) (Gonzalez Rogers, J.) (quoting *Lance Camper Mfg. Corp. v. Republic Indemn. Co.*, 44 Cal. App. 4th 194, 203 (1996)). Thus, a party to an express contract can maintain a quasi-contract theory only when it alleges "that the express contract is void or was rescinded." *Lance Camper Mfg.*, 44 Cal. App. 4th at 203. Yet rather than pleading the absence of an express contract, Plaintiffs plead its presence. Amend. Compl. ¶¶ 13, 86 & n.64. On its face, the DPLA governs "the same subject matter" as this suit. *Berlanga v. Univ. of S.F.*, 100 Cal. App. 5th 75, 89 (2024). The DPLA applies to "[a]ny litigation … between You and Apple … arising out of or relating to this Agreement, the Apple Software, or Your relationship with Apple." ECF 32-2, § 14.10 (emphasis added). And the DPLA expressly authorizes the same commissions that Plaintiffs now deem "profits unjustly received." Amend. Compl. Prayer for Relief; *see* Dkt. 32-2, Schedule 3, § 3.4 ("Additional Terms" describing the commissions that Apple collects when developers sell products in-app and that Plaintiffs challenge in this suit).

The DPLA also forecloses Plaintiffs' requested remedies. Section 13 of the DPLA *prohibits* Apple's liability for "punitive damages," "damages for loss of profits," or "any other commercial damages or losses arising out of or related to … your development efforts or participation in the [developer]

17

Gibson, Dunn &
Crutcher LLP

program, however caused." ECF 32-2, § 13 (capitalization altered). Yet the Complaint expressly seeks damages for lost "profits," "punitive damages," and other "damages" for Apple's alleged conduct. *See* Amend. Compl. Prayer for Relief. That those remedies would contravene the DPLA demonstrates the agreement and Plaintiff's equitable theories necessarily cover "the same subject." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1387 (1999); *accord Falkowski v. Imation Corp.*, 132 Cal. App. 4th 499, 518 (2005) ("[A]n implied contract cannot override the terms of an express agreement between the parties.").

The same is true for Plaintiffs' unjust enrichment and constructive-trust claims. Under California law, "[w]hen parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001). Accordingly, "[a]s a matter of law," unjust enrichment is inapplicable "where the parties have an enforceable express contract." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *accord Cal. Med. Ass'n, Inc.*, 94 Cal. App. 4th at 172. That goes for constructive trust too, which is merely a mechanism to redress unjust enrichment. *See Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995) ("The essence of the theory of constructive trust is to prevent unjust enrichment."). The DPLA unambiguously provides that Apple can receive commissions from in-app purchases. There is therefore no "unjust enrichment" when Apple received sums to which the parties agreed in their express contract. *See Cal. Med. Ass'n, Inc.*, 94 Cal. App. 4th at 172.

### b. Plaintiffs' Constructive Trust Claim Fails On The Merits (Count I)

Plaintiffs' constructive-trust theory fails on additional grounds. To start, "constructive trust" is not even a standalone cause of action under California law. *Davies v. Krasna*, 14 Cal. 3d 502, 515 (1975); *see, e.g.*, *Malfatti v. Mortg. Elec. Registration Sys.*, 2012 WL 440718, at *1 n.2 (N.D. Cal. Feb. 10, 2012) (Gonzalez Rogers, J.) (dismissing "claim to the extent it was based on constructive trust because it is not a claim for relief in itself"). Plaintiffs' counsel conceded this point at the prior motion-to-dismiss hearing, Hr'g Tr. 38:9–13, and their standalone claim for constructive trust should be dismissed with prejudice for this reason alone. But even if constructive trust were an independent cause of action, Plaintiffs fail to plausibly plead either of its key elements: that (1) the defendant possesses

Gibson, Dunn & Crutcher LLP

specific identifiable property, and (2) such property can be traced back to Plaintiffs.

***No Specific, Identifiable Property.*** A constructive trust is a remedy designed to secure return of the plaintiff's "*specific identifiable property*" in the defendant's possession. *Michaelian v. State Comp. Ins. Fund*, 50 Cal. App. 4th 1093, 1114 (1996) (emphasis added). It is not a damages claim against general assets. *See BGJ Assocs., LLC v. Superior Ct.*, 75 Cal. App. 4th 952, 968–69 (1999). As a result, one "[p]leading requiremen[t]" for constructive trust is alleging the specific, identifiable property at issue. *Michaelian*, 50 Cal. App. 4th at 1114; *see also Stansfield v. Starkey*, 220 Cal. App. 3d 59, 76 (1990) ("specific identifiable property is a prerequisite" for "a constructive trust" theory). That means Plaintiffs must identify on the pleadings "a quantifiable sum owed by defendants to plaintiff." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003); *accord Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 14 (1972) (requiring identification "of a sum certain in money").

The Amended Complaint never pleads that Apple misappropriated any specific asset or identifiable tranche of funds belonging to Plaintiffs. Plaintiffs assert they were "deprived of . . . direct engagement with their own customers." Amend. Compl. ¶ 104. But abstract "engagement" is not specific, identifiable property. And while "it is not necessary that each coin or bill be earmarked," Plaintiffs must at least assert "a specific sum" that Apple misappropriated for any amount of money to be "capable of identification" as Plaintiffs'. *Fischer v. Machado*, 50 Cal. App. 4th 1069, 1072 (1996). The Amended Complaint's speculative references to a "billion dollar . . . revenue stream," Amend. Compl. ¶ 60, "'hundreds of millions to billions,'" *id.* ¶ 71, "potentially billions," *id.* ¶ 72, or "hundreds of millions or even billions," *id.* ¶ 92, are anything but "a sum certain in money" in Apple's possession that supposedly belongs to Plaintiffs. *Zumbrun*, 25 Cal. App. 3d at 14.

Plaintiffs appear to maintain that they are entitled to *all* commissions developers paid since the Injunction. *See, e.g.*, Amend. Compl. ¶ 92, 113. That is still an inactionable, "generalized claim for money." *Vu v. Cal. Com. Club., Inc.*, 58 Cal. App. 4th 229, 235 (1997). It also is in tension with the latest *Epic* decision: The Ninth Circuit made clear that "Apple is entitled to some compensation" and "some commission." 161 F.4th at 1181 n.4, 1187. As part of the Amended Complaint, Plaintiffs now maintain that all commissions paid were unlawful because of the Ninth Circuit's statement in the contempt appeal that "'Apple should not be able to charge any commission for link-out purchases'" until

19

Gibson, Dunn &
Crutcher LLP

this Court "'has approved an appropriate fee.'" Amend. Compl. ¶ 69 (quoting *Epic Games, Inc.*, 161 F.4th at 1188). But a requirement to obtain approval for commissions subsequently announced *as a contempt sanction* does not prove that all commissions paid *after the Injunction became effective* were unlawful. To the contrary, it would have been consistent with the Injunction itself to impose "a reasonable, non-prohibitive commission," *Epic Games, Inc.*, 161 F.4th at 1186, regardless of whatever additional requirements Apple *now* must satisfy.

Plaintiffs bear the burden of pleading which specific portion of commission charged violated the Injunction—a burden the Amended Complaint does not even acknowledge, much less attempt to discharge. Indeed, it expressly pleads that half of the developers who applied for link outs "had nothing to sell through links" and thus paid nothing in commission. Amend. Compl. ¶ 59. In short, Plaintiffs cannot describe any "specific identifiable property" in Apple's possession that was misappropriated from them, *Michaelian*, 50 Cal. App. 4th at 1114, because their theory of harm reduces to a speculative thought experiment about the number of customers that *might have* used Plaintiffs' linked-out payments *if* Plaintiffs previously had offered them. *See supra* at 14–15.

***No Tracing.*** To sustain a constructive-trust theory, a plaintiff also must establish that some property originally "belonging in good conscience to the plaintiff" can "*clearly* be traced to particular funds or property in the defendant's [wrongful] possession." *Korea Supply Co.*, 29 Cal. 4th at 1150 (emphasis added); *see Optional Cap., Inc. v. DAS Corp.*, 222 Cal. App. 4th 1388, 1402 (2014) (plaintiff must "trace the funds to monies in the defendant's possession"). Thus, when "[t]he recovery requested … cannot be traced to any particular funds in [the defendant's] possession," those funds are "not the proper subject of a constructive trust." *Korea Supply Co.*, 29 Cal. 4th at 1150.

For the reasons above, *no* specific funds are alleged to be in Apple's possession that can be traced to the challenged conduct. Whether and how many customers would have used Plaintiffs' hypothetical link-out options requires extensive speculation—necessarily defeating the notion that funds "clearly" can be traced *from* Plaintiffs' possession *to* Apple's. And the mere fact that Apple *received* commissions does nothing to show that those commissions belonged *to Plaintiffs*. Not only is "Apple entitled to some compensation," *Epic Games, Inc.*, 161 F.4th at 1187, but bare receipt of commissions has a perfectly lawful "obvious alternative explanation"—consumer choice—which belies the notion

20

Gibson, Dunn & Crutcher LLP

that Plaintiffs plausibly pleaded that Apple is the constructive trustee of *wrongfully* received sums. *Twombly*, 550 U.S. at 557, 567.

### c.   Unjust Enrichment Is Not A Standalone Claim (Count II)

Plaintiff's purported "cause of action" for unjust enrichment, Amend. Compl. p. 22, should likewise be dismissed because "there is no cause of action in California for unjust enrichment." *Everett v. Mountains Recreation & Conservation Auth.*, 239 Cal. App. 4th 541, 553 (2015) (affirming dismissal of unjust-enrichment claim); *accord City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477 (2022). Counsel for Plaintiffs conceded as much in prior briefing, disclaiming any "attemp[t]" to plead a "standalone cause of action" for unjust enrichment. Dkt. 40 at 11. Nor is unjust enrichment "even a remedy." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004). Rather, it is simply "a general principle" that underlies various *other* "legal doctrines and remedies." *Id.* (quotation marks omitted). Plaintiffs' continued assertion of a standalone cause of action for unjust enrichment is thus waived by counsel's prior concession, barred as a matter of law, and should be dismissed with prejudice.

### 2.   Count III Fails Because Plaintiffs Do Not Plausibly Allege Tortious Interference With Any Business Expectancy

Plaintiffs' claim for tortious interference with business expectancy, Amend. Compl. ¶¶ 118–123, should also be dismissed. Plaintiffs assert that Apple acted tortiously by enacting policies that supposedly affected "expected business relationships" between developers and customers. *Id.* ¶¶ 120, 122. But a generalized duty not to "interfere" with business relationships is nowhere in the DPLA, in which Plaintiffs agreed that Apple has discretion to curate the App Store in a variety of ways, *see, e.g.*, Dkt. 32-2, §§ 2.1, 2.6, 2.8, 3.1(c), 3.2, 3.3.3(C)–(D), even if those measures may disrupt developers' business plans. Plaintiffs' attempt to locate such a duty in tort law should be rejected.

### a.   Plaintiffs Fail To Plausibly Allege The Loss Of Practically Certain Economic Benefits

California has long recognized "the dangers inherent in imposing tort liability" on businesses for their decisions about how to compete in the marketplace. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1137 (1990). Consistent with that warning, courts enforce a "rigorous pleading burden" on plaintiffs asserting interference claims. *Korea Supply Co.*, 29 Cal. 4th at 1158. A plaintiff must establish "'(1) an economic relationship between the plaintiff and some third party, with the

probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [or negligent] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.'" *Crown Imps., LLC v. Superior Ct.*, 223 Cal. App. 4th 1395, 1404 (2014) (alteration in original). The Amended Complaint fails to establish the loss of any potential economic benefit cognizable under California law.

"[C]ourts have narrowly construed this element," *Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1122 (E.D. Cal. 2024), "to avoid promoting speculative claims," *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 518 (2017). Courts thus "requir[e] specific facts to show that a benefit was almost certain," *Republican Nat'l Comm.*, 742 F. Supp. 3d at 1122, such as "which entities" the plaintiff "was negotiating with," "the terms" of their agreement, and "how much money, if any, Plaintiff lost as a result" of the defendant's interference, *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 962 (S.D. Cal. 2021). An interference claim is not available as a matter of law when a plaintiff's theory "hinge[s] on a high degree of uncertainty," such as when third parties "retain[] discretion" to reject a business offer, *Roy Allan Slurry Seal, Inc.*, 2 Cal. 5th at 519 (affirming dismissal on pleadings), or when the plaintiff claims the loss of access to "unknown purchasers," *Asia Inv. Co., Ltd. v. Borowski*, 133 Cal. App. 3d 832, 841 (1982).

The Amended Complaint fails those pleading requirements. As explained above (*see supra* at 12–14), neither Plaintiff articulates any effort to offer linked-out payments after the Injunction's effective date that Apple thwarted. Indeed, NFP Charting concedes that "Apple *approved* [its] redesign" in May 2026 and that its app is now "live on iOS with a link-out payment option." *Id.* ¶ 27. It identifies no customers with whom it was negotiating, the terms of any planned link-outs, or any alleged facts to show how much money it supposedly lost out on before that time. Similarly, Pure Sweat says it has only now started to invite key customers to use its forthcoming link-outs and even then it identifies none, much less any who will refuse to use those link-outs because of Apple's now-defunct Link Entitlement program. *Id.* ¶ 18. As the Ninth Circuit observed, speculation is inherent to any attempt to figure out which customers would have used link-outs and the extent to which they would have done so. *Epic Games, Inc.*, 67 F.4th at 1003; *see also* Amend. Compl. ¶ 81(d) (identifying as a question for

22

litigation "[w]hether" Plaintiffs were even "harmed").

The California Court of Appeals' decision in *Westside Center Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (1996), is particularly instructive. There, the partial owner of a shopping center (WCA) sued a supermarket company for the closure of a store, *id.* at 510, claiming that the loss of economic activity at the site interfered with WCA's relationships with "possible but as yet unidentified tenants or buyers" of the property, *id.* at 520. The Court of Appeals soundly rejected that "expansive view of the tort." *Id.* at 527. As it explained, tortious interference with a business expectancy requires interference with "an existing relationship with an identifiable buyer," not the mere "expectation of a future sale." *Id.* That is because the tort does not protect a "speculative expectation that a potentially beneficial relationship will eventually arise." *Id.* at 524.

So too here. Plaintiffs' claim is far afield from the typical scenario involving a contract with a known counterparty to achieve a determinable economic expectancy. *Korea Supply Co.*, 29 Cal. 4th at 1164. Quite the opposite: Far from alleging "specific facts" to substantiate the loss of an "almost certain" benefit, *Republican Nat'l Comm.*, 742 F. Supp. 3d at 1122, the Amended Complaint results in precisely the "high degree of uncertainty" that dooms tortious interference claims, *Roy Allan Slurry Seal, Inc.*, 2 Cal. 5th at 519. California courts have not hesitated to dismiss claims with analogous pleading defects. *See, e.g.*, *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 639 (2021) ("Merely referring to unidentified 'repeat buyers' is insufficient, when there are no facts to show that the unidentified buyers were likely to purchase the unidentified listings that were supposedly 'hidden.'").

### b. Plaintiffs Identify Neither an Independently Wrongful Act Nor Any Tort Duty Supporting an Economic-Loss Claim

Similarly, Plaintiffs fail to identify any recognized "legal duty" that Apple violated—a prerequisite for tort liability. *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 37 (2024). Identifying such a duty is crucial when the parties' relationship is governed by an express contract and the plaintiffs, as here, sue for economic loss. That is because California's economic-loss rule generally bars parties to a contract from recovering "damages that are solely monetary" through anything other than a breach-of-contract claim. *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021). An extra-contractual claim for economic loss is permitted only if a plaintiff can demonstrate the "violation of some

23

Gibson, Dunn &
Crutcher LLP

independent duty arising in tort." *Id.*; *see, e.g.*, *Ace Am. Ins. Co. v. Accellion, Inc.*, 2022 WL 2341155, at *6 (N.D. Cal. Apr. 11, 2022) (Gonzalez Rogers, J.) (dismissing claim that was "not independent of" underlying contract).

Yet the only source of duty Plaintiffs conjure—the Injunction—is plainly deficient. Apple does not owe a duty *to Plaintiffs* to abide by the Injunction. Plaintiffs concede they are neither parties to *Epic* nor intended beneficiaries of the Injunction. And while Plaintiffs have previously argued there is a "general duty not to interfere in the business affairs of another," Dkt. 40 at 10, the California Supreme Court explicitly *rejected* this approach in *Korea Supply* and its progeny. 29 Cal. 4th at 1160-61 ("Unlike California, the Restatement Second of Torts does not require a plaintiff to plead that a defendant engaged in an independently wrongful act in order to show 'improper' interference. . . . Thus, while California does follow the Restatement's general intent requirement, California law adheres to a narrower interpretation of what conduct is improper under this tort."). Under California law, the conduct must be "independently tortious"—meaning it must be "independently actionable conduct." *Korea Supply Co.*, 29 Cal. 4th at 1159 (emphasis deleted). An injunction is not like a "statute addressed to the general public"; it is a *remedy* defined by the parties and dispute in a particular case, *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 762 (1994), and therefore cannot be coopted by a non-party into a general tort standard. *CASA*, 606 U.S. at 852 ("As a matter of law, the injunction's protection extends only to the suing plaintiff.").

At end, Apple received from Plaintiffs what the DPLA entitled it to—commissions for in-app purchases. Having entered the DPLA with Apple, Plaintiffs are limited to enforcing "such obligations as each party voluntarily assumed." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 517 (1994). Nor is there any basis to imply some duty *beyond* the DPLA or the U.S. StoreKit Addendum to the DPLA, whereby Apple would owe Plaintiffs some special duty to facilitate external links. Apple is not a fiduciary, nor does it owe Plaintiffs a professional standard of care; much less do any other recognized "special duties" apply here. *Progressive W. Ins. Co. v. Superior Ct.*, 135 Cal. App. 4th 263, 277 (2005). Plaintiffs cannot invent a tort duty to facilitate a standalone case where precedent forecloses their ability to rely on the Injunction directly.

This case illustrates why courts do not permit tort claims for economic loss where the

Gibson, Dunn & Crutcher LLP

challenged conduct is authorized by contract. Were Plaintiffs' theory accepted, any new Guideline that might affect a developer's revenue, even if permitted by the DPLA, could be labeled "tortious" and be used as a springboard for litigation. And *any* antitrust injunction against a tech platform would invite suit from third-party developers for alleged non-compliance. That would gut the economic-loss rule and erase the line between contract and tort. California law does not allow that result.

### D.    This Case Should Be Stayed Pending Resolution Of *Epic*

The Court should also stay all further proceedings—including, if it wishes, this motion to dismiss—until the Supreme Court issues a certified copy of the judgment in *Apple Inc. v. Epic Games, Inc.*, No. 25-1311 (U.S.). On June 30, 2026, the Supreme Court granted certiorari in *Epic* to decide "[w]hether a court may hold a party in civil contempt based on a violation of an injunction's 'spirit' where the injunction is silent as to the conduct upon which contempt is based." *See* Pet. for Writ of Cert., *Apple Inc.*, No. 25-1311 (U.S. June 30, 2026). The Supreme Court's resolution of that question will bear directly on the viability of Plaintiffs' claims, which hinge on the theory that "Apple's contempt" entitles Plaintiffs to relief. Amend. Compl. ¶ 8; *see also id.* ¶¶ 44, 48, 62, 98, 112–113 (extensive citations to the Contempt Order).

Accordingly, the Court should grant a stay here for the same reasons it previously granted a stay pending issuance of the mandate in *Epic*. Dkt. 53. As before, "this case likely hinges on the outcome of" *Epic*. *Id.* Thus, a stay once again "would promote 'economy of time and effort for [the Court], for counsel, and for litigants.'" *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In addition to promoting efficiency, a stay would avoid significant burdens that may prove unnecessary, such as litigating class allegations, responding to discovery, and engaging in potentially unnecessary motions practice. Conversely, Plaintiffs would suffer no harm from a stay: The case remains at an early stage, and the "Ninth Circuit has made clear that monetary recovery cannot serve as the foundation for the denial of a stay." *Robledo v. Randstad US, L.P.*, 2017 WL 4934205, at *3 (N.D. Cal. Nov. 1, 2017) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

### V.    CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice under Rules 12(b)(1) and 12(b)(6), or stay the decision pending the Supreme Court's resolution of *Epic*.

Dated:  July 2, 2026

GIBSON, DUNN & CRUTCHER LLP

*/s/ Julian W. Kleinbrodt*
Julian W. Kleinbrodt

*Attorney for Defendant Apple Inc.*